**MUHAMMAD TEMPLE OF ISLAM–
SHREVEPORT et al.**

v.

**The CITY OF SHREVEPORT, LOUISI-
ANA, et al.**

**Civ. A. No. 74-968.**

United States District Court,
W. D. Louisiana,
Shreveport Division.

Dec. 2, 1974.

Opinion on Motion to Amend Judgment
Dec. 30, 1974.

Frank E. Brown, Jr., Huckaby & Piper, Shreveport, La., for plaintiffs.

John Gallagher, Gallagher & Gallagher, Roland J. Achee, Niel Dixon, Dixon & Thomas, Charles C. Grubb, Shreveport, La., for defendants.

## OPINION

STAGG, District Judge.

Plaintiffs in this action, Muhammad Temple of Islam-Shreveport, Minister Leslie X. Franklin and Orsen X. Banks, are petitioning the Court: (1) for a declaratory judgment, declaring Section 6 of Chapter 26 of the Code of Ordinances for the City of Shreveport to be unconstitutional; (2) for injunctive relief, seeking to restrain defendants from enforcing Section 6 in an unconstitutional manner; and (3) for an award of monetary damages to compensate plaintiffs for losses they purportedly have sustained as a result of the enforcement of an alleged unconstitutional ordinance. Additionally, plaintiffs are asking the Court to restrain certain police practices which tend to suppress and prohibit the selling of their official newspaper, "Mu-

hammad Speaks". Named as defendants herein are the City of Shreveport, Mayor Calhoun Allen, Commissioner of Public Safety George W. D'Artois, Chief of Police T. P. Kelly, Lieutenant B. R. Burns and Shreveport Police Officers Jimmy R. Turner and J. D. Gibson.

As the petitioners allege deprivations of federal rights and privileges, jurisdiction is vested in this Court by virtue of 28 U.S.C. § 1331, 28 U.S.C. § 1343(3) and (4), 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

Pursuant to the authority of Rule 65(a)(2) of the Federal Rules of Civil Procedure, all parties agreeing thereto, the evidentiary hearing on the application for a preliminary injunction was consolidated with the trial on the merits in this action.

## FINDINGS OF FACT

Plaintiffs Franklin and Banks are adult black men who are citizens of the United States and the State of Louisiana, domiciled in the City of Shreveport, Louisiana. Plaintiff Muhammad Temple of Islam is a religious organization dedicated to espousing the preeminence of blacks. In order to support themselves and their creed, plaintiffs herein purchase and sell frozen fish; and, in order to spread the teachings of their religion, these plaintiffs and other members of their sect sell the official Muslim publication, "Muhammad Speaks", on street corners within the City of Shreveport.

The fish are caught in Peruvian waters and are headed, gutted, packaged and frozen at sea prior to being imported to and sold throughout the continental United States as an inexpensive food for blacks. The fish enter the United States at Mobile, Alabama, and from there are distributed to the various Muslim Temples throughout the country. Those fish sold in Shreveport by the local temple are sent from Mobile to Temple 46 in New Orleans via refrigerated trucks and while in New Orleans they

are stored in refrigerated warehouses until disbursed to the local temple by refrigerated trucks.

After reaching Shreveport, the fish are marketed by means of a mobile fish market, which consists of an early-model refrigerated vehicle, resembling a milk truck, which cruises about the black neighborhoods making sales from the truck.

The official Islam newspaper, "Muhammad Speaks", is sold by members of the Muslim faith on street corners and in shopping centers throughout the City of Shreveport. At the hearing on this cause, evidence was adduced that these newspaper vendors were using pressure and intimidation in persuading the citizenry to purchase their papers. The vendors, however, refer to their sales tactics as selling with spirit and enthusiasm in the pursuit of their religious beliefs.

Plaintiffs allege that they have been restrained, harassed and intimidated in the sale of their fish and newspapers by the Shreveport Police Department. It is alleged that the defendants herein adopted a course of discriminatory conduct consisting of repeatedly stopping the plaintiffs, interrogating them in public, seizing and confiscating their official religious newspaper and intimidating them by threatening arrests and prosecution, all because plaintiffs did not possess the requisite licenses to sell their fish and newspapers.

## CONCLUSIONS OF LAW

*1. The Sale of "Muhammad Speaks"*

■ Neither party has referred to, nor has the Court's own research revealed, any license requirement for the sale of religious periodicals by colporteurs. Indeed, if such a regulation existed, it would be invalid as it would amount to an unconstitutional infringement on First Amendment rights of Freedom of Speech, Freedom of Religion and Freedom of the Press. Jones v. Opelika, 319 U.S. 103, 63 S.Ct. 890, 87 L.Ed. 1290 (1943); Murdock v. Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L. Ed. 1292 (1943); Follett v. Town of McCormick, S. C., 321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938 (1944). Accordingly, as there can be no valid license requirement imposed on the distribution of religious periodicals, especially in public places, defendants are hereby ordered to cease their harassment and interference with the sale by plaintiffs of the official Muslim publication, "Muhammad Speaks". By the same token, plaintiffs herein are ordered to instruct their newspaper salesmen henceforth to cease employing high-pressure sales tactics in the sale and distribution of their newspaper.

*2. The Sale of Frozen Fish*

Defendants contend, as to the sale of fish, that plaintiffs do not possess nor have they applied for the necessary occupational license which is mandated by the Shreveport Code of Ordinances for those engaged in the occupation which plaintiffs are pursuing. As a result, since plaintiffs are not properly licensed, defendants assert that plaintiffs are prohibited from selling their fish within the City of Shreveport by Section 6 of Chapter 26 of the Code of Ordinances of the City of Shreveport, which provides:

"Section 26–6. Peddling, etc., fresh or frozen meats or seafoods prohibited.

"It shall be unlawful for any person, as an *itinerant vendor,* to peddle, sell, offer for sale, exhibit for sale or for the purpose of taking orders for sale, fresh or frozen meats or fresh or frozen seafoods within the city limits of the City of Shreveport, Louisiana."[1] (Emphasis added.)

1. The term "itinerant vendor" is defined in Section 1 of Chapter 26 of the Code of Ordinances as "all persons, firms, and corporations * * * who engage in the *temporary or transient business* in the city of selling or offering for sale any goods or merchandise * * *". (Emphasis added.) A temporary business is defined by said Section as one which has not made definite arrangements to secure a place in or upon

It is this ordinance which plaintiffs attack as being unconstitutional as written, or alternatively, unconstitutional as applied.

In its present posture, the matter of the distribution of the newspaper, "Muhammad Speaks", being ruled upon hereinabove, this action presents two issues for determination by this Court, to-wit:

(A) Is Section 6 of Chapter 26, Code of Ordinances of the City of Shreveport a constitutional enactment?; and

(B) If constitutional, is the ordinance being applied in a constitutional manner?

## A. CONSTITUTIONALITY OF SECTION 6 OF CHAPTER 26, CODE OF ORDINANCES OF THE CITY OF SHREVEPORT.

The evidence adduced at the trial of this controversy clearly shows that defendants have repeatedly impeded the plaintiffs in the sale of their fish by stopping plaintiffs, questioning them, and finally seizing and impounding plaintiffs' fish truck. However, if plaintiffs were violating a valid ordinance in not securing the necessary occupational license, then defendants, in their efforts, were merely performing their duties as law enforcement officers, and were not discriminating against plaintiffs due to their race or religion.

Plaintiffs argue that the ordinance in question is unconstitutional, being in direct contravention of Article 1, Section 8 of the United States Constitution which gives Congress the exclusive right to regulate commerce among the several states. It is contended that Chapter 26 as a whole, and particularly Section 6 thereof, puts an undue burden on interstate commerce.

 Read in its entirety, Chapter 26 of the Code of Ordinances prohibits the sale of perishable foodstuffs, including those products sold by plaintiffs, within the city limits of Shreveport, by an itinerant vendor. Although Section 16 of Chapter 26 provides for an itinerant vendor's license, this license would not allow plaintiffs to sell their fish within the city as Section 6 clearly prohibits *itinerant vendors,* licensed or unlicensed, from selling fresh or frozen seafoods or meats within the Shreveport city limits. Therefore, plaintiffs' attack on Sections 18(4) and 19 of Chapter 26, the bond and fee requirements for an itinerant vendor's license, is without merit as these sections do not apply to the *occupational license* which is required of plaintiffs before they can sell their fish.

Having disposed of the irrelevant attacks on Section 18(4) and 19, the Court now finds, for the reasons set forth below, that Section 6 of Chapter 26 of the Code of Ordinances for the City of Shreveport is constitutional and is not an undue burden on interstate commerce.

As plaintiffs originally attacked the bond and fee requirements of Sections 18(4) and 19 of Chapter 26, which clearly are not applicable here for the reasons previously stated, the Court must assume that plaintiffs are attacking any fee levied on their right to conduct their fish-selling operations, and especially the occupational license fee.

 It is well settled that local sales of goods brought into a state from another state are subject to a nondiscriminatory exercise of the forum state's taxing power. The commerce clause does not prohibit a state from imposing a nondiscriminatory tax upon peddling of goods and sales thereof by peddlers, even though the goods, as here, are foreign or interstate imports, since the sale occurs after foreign or interstate commerce thereof has ended. As was said by the Supreme Court in Caskey Baking Co. v. Virginia, 313 U.S. 117, 119, 61 S. Ct. 881, 882–883, 85 L.Ed. 1223, 1225 (1941):

"1. While the transportation of bread across the state line is inter-

---

which such business is to be operated for at least six (6) months. A transient business

is one conducted by nonresidents of the City of Shreveport.

state commerce, that is not the activity which is licensed or taxed. The purely local business of peddling is what the Act hits, and this is irrespective of the source of the goods sold. It is settled that such a statute imposes no burden upon interstate commerce which the Constitution interdicts." (Footnote omitted.)

This Court feels that the situation at hand is squarely within the ambit of the *Caskey* decision, supra, and there has been no showing of discrimination in the application of the occupational license fee requirement. See also, Machine Co. v. Cage, 100 U.S. 676, 25 L.Ed. 754 (1880); Emert v. Missouri, 156 U.S. 296, 15 S.Ct. 367, 39 L.Ed. 430 (1895); Singer Sewing Machine v. Brickell, 233 U.S. 304, 34 S.Ct. 493, 58 L.Ed. 974 (1914); Wagner v. City of Covington, 251 U.S. 95, 40 S.Ct. 93, 64 L.Ed. 157 (1919).

In addition, another reason exists why plaintiffs' attack on the constitutionality of the ordinance must fail. From a study of Chapter 26 in its entirety, it becomes evident that the rationale behind Section 6 is to prohibit the sale of perishable foodstuffs within the corporate limits of the City of Shreveport, where the city has not had the opportunity to inspect such foodstuffs, thereby safeguarding the health of the residents who purchase the fish.

■■ That the municipality has the authority to enact such an ordinance cannot be doubted in light of the express delegation of authority from the Legislature of the State of Louisiana embodied in La.–R.S. 33:4832.[2] Furthermore, such a regulation is valid in light of the immense mass of legislative power residing in the states to be used for the protection of the health, safety and welfare of the local population. Such power was christened the "Police Power" by Justice Marshall in his opinion in Brown v.

Maryland, 12 Wheat. 419, 25 U.S. 419, 6 L.Ed. 678 (1824).

■ Ever since Willson v. Black-Bird Creek Marsh Co., 2 Pet. 245, 7 L. Ed. 412, and Cooley v. Board of Wardens, 12 How. 299, 13 L.Ed. 996, it has been recognized that, in the absence of conflicting legislation by Congress, there is a residuum of power in the state (which can be delegated to its political entities) to make laws governing matters of local concern which nevertheless in some measure affect interstate commerce. The Supreme Court of the United States in the case of Barsky v. Board of Regents of State of New York, 347 U.S. 442, 74 S.Ct. 650, 98 L.Ed. 829 (1954) stated:

"It is elemental that a state has broad power to establish and enforce standards of conduct within its borders relative to the health of everyone there. It is a vital part of a state's police power."

To the same effect, see Breard v. Louisiana, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); and Dixie Dairy Company v. City of Chicago, 355 F.Supp. 1351 (N.D.Ill.1973).

As the Court has been cited to no conflicting legislation by Congress, and feeling that the ordinance is a valid exercise of the municipality's police power, this Court is loathe to strike this ordinance with the brand of unconstitutionality.

**B. IS THE ORDINANCE BEING APPLIED IN A CONSTITUTIONAL MANNER?**

■ Plaintiffs' next argument is that the ordinance, should it be found constitutional, is not applicable to them, therefore they are being discriminated against by defendants under the guise of enforcing a valid city ordinance. To substantiate this contention counsel for plaintiffs directs our attention to the

2. The text of R.S. 33:4832 provides: "Municipalities with over fifty thousand population, may enact ordinances regulating the hawking and peddling in the streets and thoroughfares of market produce, vegetables, meat, fish, game, fruit and oysters, and may enforce the ordinances by fine or imprisonment."

language of Section 6 which, he contends, is directed only toward nonresidents of Shreveport and thus inapplicable to plaintiffs, as they are residents and domiciliaries of the State of Louisiana and the Parish of Caddo.[3]

The definition of "itinerant vendors" is fully set forth in Section 1 of Chapter 26.[4] From a reading of that definition, it is revealed that plaintiffs are itinerant vendors, not because they are nonresidents, but rather because they have not "made definite arrangements for the hire, rental or lease of premises for at least six (6) months in or upon which such business is to be operated or conducted." As plaintiffs are indeed within the definition of itinerant vendors contained in Chapter 26, the argument that Section 6 is inapplicable to the plaintiffs is wholly without merit.

▮ Equally without merit is plaintiffs' contention that their operations are exempted from the prohibition of Section 6 by Section 16 of Chapter 26. That section provides:

"Sec. 26–16. Required; exceptions.

"It shall be unlawful for any itinerant vendor to sell, offer for sale, exhibit for sale or exhibit for the purpose of taking orders for the sale thereof, any goods or merchandise, including photographs and portraits, in the city, without first obtaining a license so to do; provided, however, that this section shall not be held to be applicable to the ordinary commercial traveler who sells or exhibits for sale goods or merchandise to parties engaged in the business of buying and selling and dealing in such goods or merchandise; to vendors of farm produce, poultry, stock or agricultural products *in their natural state*; or to the sale of goods or merchandise donated by the owners thereof, the proceeds of which are applied to any charitable or philanthropic purpose." (Emphasis added.)

Plaintiffs contend that the list, "produce, poultry, stock or agricultural products", is merely illustrative, not exclusive, therefore their frozen fish can, by implication, be included in the list. Assuming that, for the sake of argument only (as the Court does not today decide the issue of the exclusivity of Section 16) plaintiffs' fish can be included in the list found in Section 16, the clear language of that section requires that the products be in their *natural state*. By plaintiffs' own admissions, both in Court and in their pleadings, the fish they are selling are headed, gutted, packaged and frozen at sea, before being imported into the United States, therefore the fish can hardly be said to be in their natural state. Accordingly, this claim is rejected.

Finally, plaintiffs contend that the ordinance is unconstitutional as applied to their selling operations, as it inhibits their free exercise of religion in contravention of the First Amendment to the United States Constitution. To substantiate their position, petitioners rely on the case of Follett v. Town of McCormick, 321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938 (1944) which held that a state may not constitutionally levy a license tax upon religious colporteurs, who are " 'preaching the gospel' by going 'from house to house presenting the gospel of the kingdom in printed form.' "

▮ The case *sub judice* is clearly distinguishable from the situation presented in *McCormick*, supra, as there is a distinction between religious ventures and purely commercial ventures by religious groups. The Supreme Court in the case of Murdock v. Commonwealth

---

3. Plaintiffs also contend that this makes the ordinance constitutionally infirm as it inhibits the fundamental constitutional right to travel. A reading of the definition of "itinerant vendors", however, quickly reveals that it applies to residents and nonresidents alike, therefore this attack is without merit.

4. See footnote 1, supra.

of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943) stated it thusly:

> "The alleged justification for the exaction of this license tax is the fact that the religious literature is distributed with a solicitation of funds. Thus it was stated in Jones v. Opelika, supra, 316 U.S. [584] at page 597, 62 S.Ct. [1231] at page 1239, 86 L.Ed. 1691, 141 A.L.R. 514, that when a religious sect uses 'ordinary commercial methods of sales of articles to raise propaganda funds'; it is proper for the state to charge 'reasonable fees for the privilege of canvassing'. Situations will arise where it will be difficult to determine whether a particular activity is religious or purely commercial. The distinction at times is vital. * * *"

Suffice it to say that from the evidence presented in this matter, the Court determines that the sale of fish by plaintiffs is a purely commercial activity, designed to provide a means of support to themselves and to their creed, rather than a religious activity designed only to spread the word of their religion; therefore, this contention is also rejected.

The foregoing constitutes this Court's findings of fact and conclusions of law. The defendants are hereby ordered to submit to this Court a judgment, approved as to form by the plaintiffs, and consistent with the foregoing.

### RULING ON MOTION

Subsequent to the filing of the formal opinion in this matter, defendants' counsel submitted to counsel for the plaintiffs, for approval as to form, a proposed judgment consistent with this Court's findings of fact and conclusions of law. Plaintiff, Muhammad Temple of Islam-Shreveport, immediately moved, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, to alter or amend the judgment on the grounds that:

> "(1) The Judgment explicitly states that the defendants were adjudged to be culpable of harrassing and interferring with plaintiffs' sale of their newspaper publication, "Muhammad Speaks". Such willful, deliberate and purposeful acts are a flagrant violation of the First and Fourteenth Amendments to the United States Constitution, and therefore makes the defendants liable in damages.
>
> "The Judgment is silent as to any compensatory, exemplary and/or punitive damages.
>
> "(2) The proffered Judgment makes no mention of reasonable attorney's fees for plaintiffs' attorneys who were acting as private attorney generals (sic) to vindicate rights the public has a strong interest in.

After careful consideration, this Court concludes that the motion is without merit and thus is denied.

The trial of this matter involved some two days of court time during which numerous witnesses were produced by plaintiffs in an attempt to establish their claims of discrimination. As a result of those witnesses, the Court found that defendants had interferred with the sale of plaintiffs' newspapers, but that such interference was done under the mistaken belief that plaintiffs had to comply with a licensing requirement before they could legally sell their papers. Finding that there could be "no valid license requirement imposed on the distribution of religious periodicals", this Court ordered the defendants to cease their interference with the sale by plaintiffs of their newspapers.

However, despite this showing of interference, plaintiffs failed to produce any proof whatsoever of the damages which they had suffered as a result of said interference. As a result, this Court did not in its original opinion and will not here award plaintiff any sum for compensatory damages.

Furthermore, as to exemplary or punitive damages, this Court did not find that the acts of defendants were wan-

tonly, maliciously or oppressively committed, therefore plaintiffs are not entitled to any award of punitive or exemplary damages.

■ Finally, as to the issue of the award of attorney's fees, such an award is entirely within the discretion of this Court. This being so, and as this Court finds that the actions of defendants were not done with such malice as implies a spirit of mischief or criminal indifference to civil duties, this Court will not award attorney's fees to plaintiffs. Jacobs v. City of New Orleans, 484 F.2d 24 (5th Cir. 1973).

■ This Court is loathe to allow an unsuccessful party, under the guise of a motion to alter or amend a judgment, to reopen a matter for the taking of additional evidence on the issue of damages when that party had an ample opportunity to produce such evidence during the initial trial. For this reason, the Court hereby refuses to sign the show cause order whereby plaintiff seeks to present additional evidence which could have been produced at initial hearing.