GAUDIYA VAISHNAVA SOCIETY, a California religious non-profit corporation, Plaintiff–Appellee,

v.

CITY AND COUNTY OF SAN FRANCISCO, Defendant–Appellant.

No. 88–1904.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 16, 1989.

Decided April 10, 1990.

As Amended on Denial of Rehearing and Rehearing En Banc Dec. 26, 1991.

Burk E. Delventhal, Deputy City Atty., San Francisco, Cal., for defendant-appellant.

Robert C. Moest, Fleishman, Fisher & Moest, Los Angeles, Cal., for plaintiff-appellee.

Before BRUNETTI and NOONAN, Circuit Judges, and HUPP,* District Judge.

## ORDER AND AMENDED OPINION

BRUNETTI, Circuit Judge:

This action challenges the constitutionality of an ordinance which regulates the sale of merchandise on public sidewalks by nonprofit groups. The district court concluded that the ordinance violated the nonprofits' First Amendment rights and enjoined its enforcement insofar as it prohibits the sale by nonprofit organizations of merchandise constituting or making a statement carrying a political, religious, philosophical or ideological message. We affirm.

## BACKGROUND

The appellees are five nonprofit organizations engaged in a variety of charitable, religious and political activities in the San Francisco area. All five of the nonprofit groups have over the past several years sold various message-bearing ("expressive") merchandise such as T-shirts, books, buttons, stuffed animals, jewelry and bumper stickers. The district court in its findings described each organization: Gaudiya Vaishnava Society, a religious organization, performs sankirtan, a public rit-

ual intended to disseminate the teachings of and win coverts to Gaudiya Vaishnavism. In the course of sankirtan, members collect alms and offer clothing for sale, some of which bear messages related to the organization's religious beliefs. Greenpeace Pacific–Southwest, Inc., is a nonprofit political group which advocates numerous environmental causes. As part of its activities, Greenpeace sets up tables in the City of San Francisco to bring its message to the general public and solicit financial contributions and membership. At these tables Greenpeace sells a wide variety of merchandise, including message-bearing T-shirts. All of its merchandise is intended to transmit messages, verbally or symbolically, about the causes Greenpeace espouses. San Francisco Nuclear Weapons Freeze Campaign is an unincorporated political organization that advocates "freezing" and reversing the production of nuclear arms. The organization is engaged in a campaign to inform the public about its beliefs. The group communicates its message and solicits money by setting up tables in San Francisco to distribute literature, solicit signatures on petitions, and sell buttons, postcards, bumper stickers and T-shirts. San Francisco CISPES is the San Francisco chapter of the Committee in Solidarity with the People of El Salvador. The Organization is opposed to the United States foreign policy regarding El Salvador and other Central American countries. To raise funds and disseminate its message, CISPES operates street corner tables, soliciting donations and offering for sale flyers, buttons, message-bearing T-shirts and literature. San Francisco Lesbian–Gay Freedom Day Parade and Celebration Committee, Inc. is a nonprofit educational organization which organizes civil rights events. The organization raises its operating budget by selling message-bearing buttons and T-shirts.

The nonprofits challenged San Francisco Police Code § 660.2(i) which prohibited nonprofit organizations from selling in the

---

* Honorable Harry L. Hupp, United States District Judge for the Central District of California, sitting by designation.

Fisherman's Wharf or Union Square areas of San Francisco without a commercial peddler's permit, any merchandise other than books, pamphlets, buttons, bumperstickers, posters, or items that have no intrinsic value other than to communicate a message.[1] As originally enacted, the ordinance required nonprofits to register with the police department and make certain disclosures to the public regarding their purposes.

After the adoption of the ordinance, tourists, merchants and other citizens complained about the inadequate regulation of sales by charitable organizations.[2] The ordinance was amended to require all individuals, including those hired by charitable organizations, to obtain a peddling permit before selling merchandise on public streets. The penalty for violation of the ordinance is a fine of fifty to five hundred dollars or imprisonment for repeated violations. San Francisco Police Code, § 869.1.

On 22 July 1986, one of the nonprofits, appellee Gaudiya Vaishnava Society ("GVS") instituted an action for injunctive and declaratory relief, and applied for a temporary restraining order. The other four named plaintiffs joined suit on 4 August 1986 when GVS filed an amended complaint.

The district court awarded the plaintiffs a preliminary injunction on 15 August 1986. The court informed the parties that it intended to issue an order enjoining § 660.2(i) only as it applied to the sale of "merchandise constituting or making a statement carrying a religious, political, philosophical or ideological message relevant to the purpose of the organization." The City objected as it did not want its police officers to have to determine which merchandise met this test. The court therefore enjoined the City from enforcing the entire ordinance.

Two months later, at the motion of the City, the court modified the injunction to reflect the initial proposed order.[3]

Before the permanent injunction proceedings came before the district court, the City recodified § 660.2(i) as § 660.2(j) and amended it to its present form, excluding from the peddler permit requirement, the sale of merchandise which had no intrinsic purpose or value other than to communicate a message.[4] The parties agreed that

1. Peddler permits under S.F.Cal.Police Code §§ 869–869.18 are granted, denied and revoked at the discretion of the police department. Permits are only issued to natural persons, not organizations and are nontransferable. Applicants are charged a $300 nonrefundable application fee and an annual permit tax. The district made findings that few if any of these permits were available.

2. Because of overhead costs associated with maintaining a storefront, the local merchants complained that the nonprofits are able to discount the price of similar merchandise like T-shirts by as much as 33%.

3. The October 10, 1986, district court order states that:
   1. The sale by an organization, or its members or representatives, of books and pamphlets as well as articles of clothing and other merchandise constituting or making a statement carrying a religious, political, philosophical or ideological message relevant to the purpose of the organization ('expressive item') is an activity protected by the First Amendment.
   .      .      .      .      .
   4. The peddlers' permit provision, § 660.2(i), does not offer a constitutionally adequate alternative to plaintiffs because the Police Code

makes the issuance of permits discretionary, subjects them to being revoked on discretionary grounds, denies them to plaintiffs as charitable organizations, imposes an excessive application fee and annual tax, and makes few, if any, permits presently available to anyone. Therefore, defendant, is enjoined from enforcing the prohibition against 'sales solicitations for charitable purposes,' [in Fisherman's Wharf area], against any charitable organization or person acting for it with respect to the sale or distribution of expressive items as defined in paragraph 1 of this order.

4. Section 660.2(j) of the San Francisco Municipal Code (Police Code § 660 et seq.) currently provides:

No person may engage in sales solicitations for charitable purposes by means of selling clothing, jewelry, or any other goods, products, services or merchandise in any area of the City and County of San Francisco unless that person obtains the appropriate peddling permit pursuant to Articles 13, 17.3 or 24 of the San Francisco Police Code. *This Section shall not apply to the sale of books, pamphlets, buttons, bumperstickers, posters or any other type of item that has no intrinsic value or purpose other than to communicate a message."* (Emphasis added.)

the original preliminary injunction would apply to § 660.2(j). This amendment narrowed the issue before the district court to whether the City could regulate the sale of merchandise, such as T-shirts, stuffed animals or jewelry, constituting or making a statement carrying a message expressing the beliefs of a nonprofit organization.

On 21 March 1988 the district court issued its Findings of Fact and Conclusions of Law and its judgment granting plaintiffs a permanent injunction. The district court found that the sale of expressive items was protected by the First Amendment, and held that the City's commercial peddler's permit system was unconstitutional as it made issuance and revocation of permits discretionary, denied permits to charitable organizations, imposed an excessive application fee and annual tax, and made few if any permits available to anyone. This appeal by the City followed.

### ANALYSIS

### I

The district court's jurisdiction over the underlying litigation of this appeal is based on 28 U.S.C. §§ 1331 and 1343(a)(3). We have jurisdiction over an appeal from an order issuing a permanent injunction under 28 U.S.C. § 1291.

■ Our review of an order granting a motion for a permanent injunction is limited to determining whether the district court abused its discretion in issuing the order, based on erroneous legal standards, or clearly erroneous findings of fact. *S.E.C. v. Goldfield Deep Mines Co. of Nevada*, 758 F.2d 459, 465 (9th Cir.1985). However, we also review the permanent injunction for constitutional infirmity. Because this involves the application of undisputed facts to constitutional law, this review is done de novo. *Portland Feminist Women's Health Center v. Advocates for Life, Inc.*, 859 F.2d 681, 684 (9th Cir.1988), citing *Jews for Jesus, Inc. v. Board of Airport Commissioners of City of Los Angeles*, 785 F.2d 791, 792 (9th Cir.1986), *aff'd by* 482 U.S. 569, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987). We conduct an inde-

pendent review of the record to be sure that "the speech in question actually falls within the protected category", and to determine whether the constitutional factors have properly been applied. *Playtime Theaters, Inc. v. City of Renton*, 748 F.2d 527 (9th Cir.1984), *rev'd on other grounds*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

■ Because this case involves a licensing ordinance which allegedly vests unbridled discretion in a government official over whether to deny or permit expressive activity, the nonprofits may challenge it facially without the necessity of first applying for, and being denied, a permit. See *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988).

Under *Lakewood*, "a facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers.... The law must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks." 486 U.S. at 759, 108 S.Ct. at 2145.

Here, the unguided discretion provided by the peddling-permit scheme grants the police chief complete power to allow or prohibit charitable sales solicitation for any reason, including the message conveyed by the sales pitch or by the goods themselves. Since the solicitations at issue here are protected expression, *see infra*, the scheme grants power to the chief of police to discriminate based on the content of protected expression.

The regulation also has a close enough nexus to expression to pose a real threat of censorship. Section 660.2(j) regulates conduct which is itself protected speech—charitable sales solicitation. The chief of police can use discretion to shut off plaintiffs' speech. This situation is different from one in which a law with no close connection to expression provides an official with discretion that might be used to reward or

punish speech. *See Lakewood,* 486 U.S. at 761, 108 S.Ct. at 2146.

## II

### *First Amendment Protection*

■ The first question we are called upon to answer is whether the sale of merchandise which carries or constitutes a political, religious, philosophical or ideological message falls under the protection of the First Amendment. This question is one of first impression for the courts of appeals.

The City argues that the sale of merchandise is nothing more than a commercial transaction and therefore is afforded no constitutional protection. In order to reach its conclusion the City has adopted a test it calls the "purely communicative value test." Under this test the City reasons that an expressive item sold by a nonprofit organization is protected only when it has *no intrinsic value* other than its message. Because items such as T-shirts, jewelry, and stuffed animals have intrinsic value beyond the messages they convey, the City argues that the sale of such items constitutes a commercial transaction and is not constitutionally protected.

The City cites little support for its adoption of the "purely communicative value" test. Because no case law draws this intrinsic value distinction, the City cites cases which instead draw a distinction between the sale of merchandise bearing a group's message and the sale of merchandise bearing no message. For instance, the City cites *Muhammad Temple of Islam–Shreveport v. City of Shreveport, La.,* 387 F.Supp. 1129 (W.D.La.1979), *aff'd by* 517 F.2d 922 (5th Cir.1975) (*Muhammad–Temple*), wherein the plaintiffs sold fish and religious newspapers on public streets. The court held that the City could regulate the sale of fish as it was a "purely commercial activity." *Muhammad Temple,* 387 F.Supp. at 1136. However, the court held that the City could not interfere with the plaintiffs' right to sell its religious newspaper which was designed "to spread the word of their religion." *Id.* The court drew no distinction between the intrinsic

value of fish and newspapers but instead relied on the fact that the newspaper conveyed the group's message, while the fish did not.

The appellees do not argue this point, and the lower court judgment does not allow the nonprofits to sell merchandise bearing no message, such as fish. The nonprofits contend that because the T-shirts and other merchandise they sell convey core First Amendment messages (political, religious and philosophical), their activity should be afforded full protection under the First Amendment.

The Supreme Court has held that fundraising for charitable organizations is fully protected speech. *Board of Trustees of the State University of New York v. Fox,* 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). Additionally, it has held that an expressive item does not lose its constitutional protections because it is sold rather than given away. *City of Lakewood,* 108 S.Ct. at 2143 n. 5; *Heffron v. International Society for Krishna Consciousness,* 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981); *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 633, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980).

The Supreme Court has recognized that drawing the line between "purely commercial ventures and protected distribution of written materials [is] a difficult task." *Schaumburg,* 444 U.S. at 630, 100 S.Ct. at 832. In attempting to distinguish between commercial speech and fully protected speech, the Court in *Schaumburg* held that when a transaction "does more than inform private economic decisions and is not primarily concerned with providing information about the characteristics and costs of goods and services, it [is not treated as] a variety of purely commercial speech." 444 U.S. at 632, 100 S.Ct. at 834. Because charitable solicitation is "characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political or social issues" the *Schaumburg* court held it must be treated

as a fully protected activity under the First Amendment. *Id.*

Likewise, in *Riley*, the Supreme Court held that "where ... the component parts of a single speech are inextricably intertwined we cannot parcel out the speech, applying one test to one phrase and another test to another phrase." *Riley v. National Federation of the Blind of North Carolina, Inc.,* 487 U.S. 781, 108 S.Ct. 2667, 2677, 101 L.Ed.2d 669 (1988). *Riley* involved a state-law requirement that in conducting fund-raising for charitable organizations the professional fund-raisers must insert in their presentations a statement setting forth the percentage of contributions that are actually turned over to the charitable organization. The court refused to separate the component parts of charitable solicitations from the fully protected whole and applied exacting First Amendment scrutiny. *Id.*

The Court in *Fox* reaffirmed its holding in *Riley* that the level of First Amendment scrutiny depends upon the nature of the speech taken as a whole. 109 S.Ct. at 3031. The court reviewed whether a state law which prohibited AFS, Inc., a private commercial enterprise from demonstrating and selling its houseware at a party hosted in a student dormitory violated the First Amendment. *Id.* AFS, Inc. argued that its presentations touched on other subjects such as financial responsibility and how to run an efficient home and that pure speech and commercial speech are inextricably intertwined and therefore should be classified as fully protected speech. The Supreme Court noted that "there is nothing whatever inextricable about the noncommercial aspect of these presentations" and that

> these home economic elements no more converted AFS's presentations into edu-

cational speech, than opening sales presentations with a prayer or a Pledge of Allegiance would convert them into religious or political speech.... [C]ommunications can constitute commercial speech notwithstanding the fact that they contain discussions of important public issues.... [A]dvertising which 'links a product to a current debate' is not thereby entitled to the constitutional protection afforded noncommercial speech.

*Fox,* 109 S.Ct. at 3031–32 (citations omitted).

The street sale of merchandise such as a T-shirt and stuffed animals involves "commercial communication by the sales force." *See Project 80's, Inc. v. City of Pocatello,* 876 F.2d 711, 714 (9th Cir.1988) (youth organization's door to door candy sales activities is commercial speech). As the district court found, however, Gaudiya Vaishnava Society, Greenpeace, CISPES, and San Francisco Nuclear Weapons Freeze Campaign sell their merchandise in conjunction with other activities in order to disseminate their organizations' message. The nonprofit groups inform individuals of their causes through distributing their literature, engaging in persuasive speech, and selling merchandise with messages affixed to the product. This "informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues," is fully protected speech. *Schaumburg,* 444 U.S. at 633, 100 S.Ct. at 834. Where the pure speech and commercial speech by the nonprofits during these activities is inextricably intertwined, the entirety must be classified as noncommercial and we must apply the test for fully protected speech. *Riley,* 108 S.Ct. at 2677.[5] Accordingly, the

---

**5.** The City also contends that the only political, religious, philosophical or ideological message conveyed during the sales of merchandise by the nonprofits is a small, innocuous, camouflaged or removable message on the merchandise itself. We do not address the case of sales of merchandise not inextricably intertwined with first amendment speech. That situation, which was not presented by the facts in this case, would presumably fall under the rule of *Board of Trustees of the State University of New*

*York v. Fox,* 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). If the speech element was purely commercial, a political or religious message not intertwined with that commercial message would be insufficient to transform the whole into protected speech.

This facial, systemic challenge does not require us to determine at what point the commercial element of a sale of any type of merchandise would so overwhelm the noncommercial element with which it is intertwined.

district court correctly found that the San Francisco Ordinance impermissibly regulates protected speech in a public forum.

The City has consistently argued that the ordinance is valid as a law of general application regulating conduct that may have an incidental effect on speech, citing *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

We note here for purposes of clarity only that the four-part balancing test first enunciated in *O'Brien* does not apply to this case. *O'Brien* held that the government's interest in prohibiting the act of draft card destruction could justify an "incidental limitation[ ] on First Amendment freedoms." *Id.* at 376, 88 S.Ct. at 1679.

We are not concerned here with expressive conduct regarding symbolic items, as was the Court in both *O'Brien* and, more recently, *Texas v. Johnson*, 491 U.S. 397, 402–06, 109 S.Ct. 2533, 2538–40, 105 L.Ed.2d 342 (1989). This case, rather, is one that requires us to examine whether the commercial and pure elements of speech are inextricably intertwined, as in *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988), and *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). Therefore, we reject the City's contention that under *O'Brien*, the ordinance was valid.

Even if one did apply the four tests of *O'Brien*, the ordinance would not pass muster. The ordinance does pass three of the tests. It is within the constitutional power of the city. It protects important governmental interests in avoiding clutter and promoting the aesthetic appearance of the city. These interests are not related to communication. But the fourth test means that "the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *United States v. Albertini*, 472 U.S. 675, 689, 105 S.Ct. 2897, 2906, 86 L.Ed.2d 536 (1985); or, in other words, the regulation must not "burden substantially more speech than is necessary to further the government's legitimate interests."

*Ward v. Rock Against Racism*, 491 U.S. 781, 799, 109 S.Ct. 2746, 2758, 105 L.Ed.2d 661 (1989). In the present case rules that give guidance to the chief of police would be compatible with the city's interests. No need for unbridled discretion in the chief exists. The ordinance fails to meet the standards set by *O'Brien*.

### III

### *The City's Permit System*

■ The district court found that the city ordinance was unconstitutional on its face because it permitted the denial or revocation of a permit on the basis of discretionary judgment by the Chief of Police. We agree.

■ The Supreme Court has repeatedly recognized public streets "as the archetype of a traditional public forum." *Frisby v. Schulz*, 487 U.S. 474, 108 S.Ct. 2495, 2499, 101 L.Ed.2d 420 (1988). In these traditional public fora, the government's authority to restrict speech is at its minimum. Time, place and manner restrictions are valid only if they are content-neutral, narrowly tailored to serve a significant government interest, and retain ample alternative channels of communication. *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983). As an application of the requirement that restrictions be narrowly tailored, a law cannot condition the free exercise of First Amendment rights on the "unbridled discretion" of government officials. *City of Lakewood*, 108 S.Ct. at 2143.

In this case, nonprofits wishing to sell merchandise that is inextricably intertwined with otherwise fully protected speech are required to obtain a peddler's permit pursuant to Articles 13, 17.3 or 24 of the San Francisco Police Code. Section 869.7 of Article 13 requires that an application for a peddler's permit be submitted to the Chief of Police. Under Section 869.2 "[t]he Chief of Police *may* issue a permit...." (Emphasis added). The ordinance provides no specific grounds for granting or denying permits: no explicit

limits are placed on the Chief of Police's discretion. An almost identical permit system was struck down by the Supreme Court in *City of Lakewood,* 108 S.Ct. at 2152. The Court in *City of Lakewood,* held that it is unconstitutional to grant an official "unfettered discretion to deny a permit application." *Id.* "Such discretion grants officials the power to discriminate and raises the spectre of selective enforcement on the basis of the content of speech." *N.A.A.C.P., Western Region v. City of Richmond,* 743 F.2d 1346, 1357 (9th Cir. 1984). Because the Chief of Police is granted complete discretion in denying or granting such permits, we hold that the City's ordinance is not saved from constitutional infirmity by its commercial peddler's permit system.

## CONCLUSION

The district court permanently enjoined the City from enforcing section 660.2(j) of the San Francisco Police Code against plaintiffs or any nonprofit organization or person acting for it, with respect to the sale of merchandise constituting or making a statement carrying a religious, political, philosophical or ideological message relevant to the purpose of the organization. We hold that when nonprofits engage in activities where pure speech and commercial speech are inextricably intertwined the entirety must be classified as fully protected noncommercial speech. Accordingly, we modify the permanent injunction to prohibit the City from enforcing Section 660.2(j) of the San Francisco Police Code against plaintiffs or any other nonprofit organization or person acting for it, with respect to the sale of merchandise which is inextricably intertwined with a statement carrying a religious, political, philosophical or ideological message.

AFFIRMED AS MODIFIED.