**RUBIN, et al., Plaintiffs,**

v.

**CITY OF SANTA MONICA, Defendant.**

**No. CV 93–1255 LGB.**

United States District Court,
C.D. California.

April 28, 1993.

Carol A. Sobel, Sharon Robinson, Paul Hoffman, ACLU Foundation of Southern California, Los Angeles, CA, for plaintiffs.

Richards, Watson & Gershon, P.C., Michael Jenkins, Christi Hogin, Los Angeles, CA, for City of Santa Monica.

## ORDER

BAIRD, District Judge.

This matter is a First Amendment[1] challenge to a recently-enacted City of Santa Monica ordinance (hereinafter, the "ordinance") brought by Plaintiffs, who are community activists. The ordinance establishes a scheme whereby groups of 35 or more which seek to congregate in city parks must apply beforehand for permits.

Plaintiffs have requested a preliminary injunction restraining the City from enforcing the ordinance.

## I. THE ORDINANCE

In relevant portions, City of Santa Monica Ordinance Number 1668 (CCS) provides:

§ 4.53.030 "A permit is required for the use of any City park by a group of thirty-five (35) or more persons."

§ 4.53.050 The following are grounds for denial:

a) the proposed area is not suitable for the proposed activity;

b) the proposed area is already reserved;

c) the organizers do not possess necessary licenses to conduct the activity;

d) "The activity constitutes a public nuisance or is detrimental to public health or safety";

e) the issuance of a permit would violate Section 4.53.060;

f) a previous permit for the group was revoked, and the Director of the Department of Cultural and Recreation Services finds that the grounds for revocation are likely to recur.

§ 4.53.060 General Requirements:

a) "No person, persons or group shall be issued more than two permits a month and no activity sponsored or organized by the same person, persons or group shall occur more frequently than twice a month in the same park";

b) "No activity shall exceed six (6) hours in duration";

c) the Director shall determine how many permits per day/per park shall be issued;

d) mechanical equipment is banned;

e) fires are banned;

f) roping off areas of a park is banned.

This section further provides that the Director may waive any of these requirements "upon a showing to the Director's satisfaction of special or unique circumstances, or that compliance with one or more of the requirements would create a unique hardship or would contravene the human services objectives of the City."

§ 4.53.070 This section includes conditions, such as parking, sound, liability, and other restrictions.

§ 4.53.080 Revocation of permits may occur if:

a) the permittee has violated a law;

b) "The permitted activity is causing a public nuisance or is detrimental to public health and safety";

c) "The permit was issued on the basis of misrepresentations ...";

d) "The permit was issued in error."

---

1. The parties use the term "First Amendment" to refer to the protections for expressive activity contained in both the federal and state constitu-tions. The complaint states separate claims under both constitutions.

§ 4.53.090 The following matters are exempted from these requirements:
 a) city-sponsored events;
 b) athletic fields and park buildings.
§ 4.53.100 First Amendment Activities:[2]
 "A permit shall be issued for any assemblage or gathering of thirty-five (35) persons or more, such as a demonstration, rally or protest, organized for the purpose of conveying a political, religious or other similar type of message protected by the California Constitution or the First Amendment of the United States Constitution. The permit shall be issued within twenty-four (24) hours of submittal of a complete application to the Director. The Director may waive any or all of the requirements of this Chapter but may establish reasonable time, place and manner regulations for the event to assure the protection of public health and safety and to protect the park grounds and facilities."

## II. STANDARD FOR ISSUING A PRELIMINARY INJUNCTION

Both sides have cited *Chalk v. United States Dist. Ct.*, 840 F.2d 701 (9th Cir.1988), as providing the appropriate standard for issuing a preliminary injunction. Under *Chalk,*

> The moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor.... These are not separate tests, but the outer reaches of a single continuum.

840 F.2d at 704 (quotations and citations omitted).

## III. ANALYSIS

### 1. Standing

■ For purposes of standing under Article III of the Constitution, litigants need not actually apply for and be denied a permit prior to bringing a constitutional challenge against an ordinance which allegedly vests unbridled discretion in government officials to permit or deny expressive activity. *See*

---

**2.** This section of the ordinance is referred to hereinafter as the "First Amendment exception."

**3.** The second "evil," "a prior restraint that fails to place limits on the time within which the

*City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 755–56, 108 S.Ct. 2138, 2142–43, 100 L.Ed.2d 771 (1988); *Gaudiya Vaishnava Soc. v. City of San Francisco*, 952 F.2d 1059, 1062 (9th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992).

■ Plaintiffs Rubin and Ducette have declared that they have engaged in organized expressive activity in Santa Monica parks in the past, and that they intend to do so in the future. Furthermore, Defendant has not challenged Plaintiffs' standing to bring suit.

The Court therefore finds that Plaintiffs have standing to bring suit.

### 2. Standard of Review for a Prior Restraint

■ The ordinance, as drafted, acts as a prior restraint on speech, and therefore this Court must apply "the exacting scrutiny necessitated by a state-imposed restriction of freedom of speech." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 786, 98 S.Ct. 1407, 1421, 55 L.Ed.2d 707 (1978).

As the Supreme Court stated in *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 225–26, 110 S.Ct. 596, 604–05, 107 L.Ed.2d 603 (1990) (quotations omitted),

> any system of prior restraint ... comes to this Court bearing a heavy presumption against its constitutional validity.... Our cases addressing prior restraints have identified two evils that will not be tolerated in such schemes. First, a scheme that places unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship.[3]

*See also Forsyth County v. Nationalist Movement*, —— U.S. ——, 112 S.Ct. 2395, 2401, 120 L.Ed.2d 101 (1992).

The Santa Monica ordinance places unbridled discretion in the hands of the Director,

---

decisionmaker must issue the license," 493 U.S. at 226, 110 S.Ct. at 605, is not at issue in the instant lawsuit.

and thus must fail under strict scrutiny, for two reasons. First, under § 4.53.060 of the ordinance, the Director may waive any of the ordinance's general requirements

upon a showing to the Director's satisfaction of special or unique circumstances, or that compliance with one or more of the requirements would create a unique hardship or would contravene the human services objectives of the City.

§ 4.53.060. The ordinance does not define what might constitute "special or unique circumstances," nor does it indicate what might "create a unique hardship or would contravene the human services objectives of the City."[4]

Second, § 4.53.100 of the ordinance exempts so-called "First Amendment Activities" from the regulations.[5] Defendant argues that the First Amendment exception insures that the ordinance shall only apply to nonexpressive activity. However, the ordinance does not define the concept of "First Amendment Activities," nor, indeed, could it define this concept.[6]

As the Supreme Court noted in *City of Lakewood*, 486 U.S. at 758, 108 S.Ct. at 2144,

the absence of express standards makes it difficult to distinguish, "as applied," between a licensor's legitimate denial of a permit and its illegitimate abuse of censorial power. Standards provide the guideposts that check the licensor and allow courts quickly and easily to determine whether the licensor is discriminating against disfavored speech. Without these guideposts, *post hoc* rationalizations by the licensing official and the use of shifting or illegitimate criteria are far too easy, mak-

ing it difficult for courts to determine in any particular case whether the licensor is permitting favorable, and suppressing unfavorable, expression.

*See also Forsyth County*, —— U.S. at ——, 112 S.Ct. at 2402–2403; *City of Cincinnati v. Discovery Network, Inc.*, —— U.S. ——, ——, n. 19, 113 S.Ct. 1505, 1513 n. 19, 123 L.Ed.2d 99 (1993).

Defendant's position, and the First Amendment exception itself, beg the question. What are protected activities, and what are nonprotected activities? What does the First Amendment exception really mean? Because the First Amendment exception by necessity involves a prior examination by the Director into proposed "First Amendment Activities," it is difficult to avoid the conclusion that the Director is vested with unbridled discretion to determine which activities are protected and which are nonprotected.

Since the ordinance undeniably establishes a prior restraint on speech, the ordinance must be subjected to strict scrutiny. The application of strict scrutiny to the infirm First Amendment exception demonstrates that the ordinance is likely to fail constitutional muster, and Plaintiffs thus are likely to succeed on the merits. In the alternative, Plaintiffs have at least met the second *Chalk* requirement of raising serious questions.

*3. Vagueness*

 A statute may be found to be violative of the First Amendment on grounds of vagueness for three reasons. First, a vague

---

**4.** This "standard" is not only vague, but it is likely to change with the passing of time. "[T]he human services objectives of the City" today are not likely to be "the human services objectives of the City" tomorrow.

**5.** § 4.53.100 of the ordinance provides:

A permit shall be issued for any assemblage or gathering of thirty-five (35) persons or more, such as a demonstration, rally or protest, organized for the purpose of conveying a political, religious or other similar type of message protected by the California Constitution or the First Amendment of the United States Constitution. The permit shall be issued within twenty-four (24) hours of submittal of a complete application to the Director. The Director may waive any or all of the requirements of this Chapter but may establish reasonable

time, place and manner regulations for the event to assure the protection of public health and safety and to protect the park grounds and facilities.

**6.** Although not controlling here because of important distinguishing issues of law and of fact, the Supreme Court's decision in *Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987), suggests the peril in drafting an ordinance which uses the term "First Amendment Activities" as . if the meaning of such a term were self-evident or easily discernable. More precisely, *Jews for Jesus* suggests that such provisions are inherently vague and unenforceable, and hence unconstitutional.

statute does not give proper notice of what is permissible and what is prohibited. Second, a vague statute allows for arbitrary and discriminatory enforcement by government officials. Third, a vague statute may have a chilling effect. *See Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). The ordinance is void for vagueness for precisely these three reasons.

First, the ordinance's First Amendment exception fails to provide notice to either individuals or administrators of what conduct is permissible and what conduct is prohibited.

Second, the ordinance is impermissibly vague as it does not define "public nuisance" or "detrimental to public health and safety," §§ 4.53.050(d) and 4.53.080(b), which the ordinance lists as grounds for denial and revocation. In this respect the instant matter is analogous to *Shuttlesworth v. Birmingham,* 394 U.S. 147, 150–51, 89 S.Ct. 935, 938–39, 22 L.Ed.2d 162 (1969), where the Supreme Court struck down a conviction for participating in a civil rights march which was based upon a failure to obtain a permit, where such a permit could be denied by the local commission if "in its judgment the public welfare, peace, safety, health, decency, good order, morals or convenience" were implicated. 394 U.S. at 149–50. The Court held that the *Shuttlesworth* statute was impermissible, because of the unbridled discretion it granted to the commission.[7]

Finally, the vague aspects of the ordinance may impermissibly chill expression.

In Opposition, Defendant asserts that, pursuant to § 4.53.100, a permit application under the First Amendment exception must be issued. Thus, Defendant argues, the contention that the ordinance is void for vagueness due to its failure to define the terms "public nuisance" or "detrimental to public health and safety" is inapposite, as a First Amendment permit application by definition cannot

be denied. The Court rejects this argument for the reasons noted *supra,* namely, that the First Amendment exception itself is vague and standardless.

Defendant also asserts that the Administrative Regulations which the City has adopted for the purpose of implementing the ordinance[8] ameliorate the ordinance's alleged constitutional infirmities. The Administrative Regulation relevant to the First Amendment exception provides:

E. "First Amendment Activities" shall mean and include any combined or coordinated activity which is organized to convey a particularized message which is likely to be understood by those present. The exercise of these protected rights shall be the principal purpose of the event, and not merely incidental to non-protected conduct, such as sports, party games, cooking, eating or sunbathing. Examples of First Amendment activities include, without limitation, rallies, protests, speeches, vigils, prayer meetings, religious services, and the like.

Admin.Reg. § 103.E, Defendant's Exhibit B.

While the City's efforts to reduce the discretion inherent in the First Amendment exception are laudable, it nevertheless appears that, in an attempt to reduce the ordinance's innate discretion, the City has actually increased the ambiguities and possibilities for discretion inherent in the scheme. The Administrative Regulation excerpted *supra* does not provide comprehensible and unambiguous standards for the implementation of the First Amendment exception, and does not make a cognizable dent in the discretion vested in the Director under the ordinance.

Thus, Plaintiffs have demonstrated that they are likely to succeed on the merits with regard to the vagueness of the ordinance. In the alternative, Plaintiffs have at least raised serious questions, pursuant to *Chalk.*

---

7. Defendant is correct that the *Shuttlesworth* Court did intimate that there could be "legitimate municipal regulation of the public streets and sidewalks," 394 U.S. at 153, 89 S.Ct. at 940.

8. Plaintiffs attack the validity of the administrative regulations and challenge their permissibility under California law. However, in an effort to read the statute to harmonize with the Constitution, the Court shall assume *arguendo* that the regulations are valid.

### 4. The Ordinance Is Not a Permissible Time, Place, and Manner Restriction

■ The Supreme Court recently stated that "any permit scheme controlling the time, place and manner of speech must not be based on the content of the message, must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication." *Forsyth County*, —— U.S. at —— – ——, 112 S.Ct. at 2401.

The Santa Monica ordinance is not content-neutral, as § 4.53.060 provides potentially greater grants of expression to speakers who support "the human services objectives of the City." [9]

Next, the ordinance is not narrowly-tailored, because it vests the Director with an excess of discretion (*see Gaudiya Vaishnava Society*, 952 F.2d at 1065) and because it does appear that less-restrictive alternatives which would meet the City's goals are available and would not bestow unbridled discretion on government officials.

Finally, the ordinance does not "leave open ample alternatives for communication," as groups which are denied permits may be left with no alternatives for the expression of their views—for instance, the ordinance might restrict the ability of groups to communicate their political views in public parks and areas adjacent to the local seat of government. *Cf. Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir.1990).

Defendant's argument that the ordinance "leave[s] open ample alternatives for communication" must be rejected, as it is unclear whether § 4.53.060 of the ordinance limits groups to two permits per month per park, or to two permits per month total.[10]

Therefore, Plaintiffs have demonstrated that they are likely to succeed in showing that the ordinance is not a permissible time, place, and manner restriction. In the alternative, Plaintiffs have at least raised serious questions regarding this issue, pursuant to *Chalk.*

### 5. Severability.

■ It is the obligation of this Court to attempt to read the instant ordinance in a manner which harmonizes with the Constitution. Moreover, the Court must operate from the assumption that any sections of the statute found to be unconstitutional could be severed from the statute. *Regan v. Time, Inc.*, 468 U.S. 641, 653, 104 S.Ct. 3262, 3269, 82 L.Ed.2d 487 (1984). On the other hand, a statute should not be considered severable if the municipality would not have enacted it in the absence of the unconstitutional provisions. *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 506 n. 15, 105 S.Ct. 2794, 2803 n. 15, 86 L.Ed.2d 394 (1985).

To separate the constitutional aspects of this ordinance from the unconstitutional aspects of this ordinance is an impossible task. Defendant's position that the ordinance passes constitutional muster relies on the First Amendment exception "saving" the ordinance. However, as discussed above, the First Amendment exception impermissibly vests unbridled discretion in the hands of the Director. If this Court were to sever the First Amendment exception from the ordinance, unquestionably the remaining ordinance would be unconstitutional.

Moreover, severance in this instance would be perilously similar to legislating from the bench. If the Court were to remove the First Amendment exception from the ordinance, it would be necessary for the Court to offer a detailed interpretation of the manner in which the ordinance could be operated constitutionally. This would certainly require the Court to make policy choices regarding the details of the permit scheme, and this task is beyond the purview of this Court.

---

**9.** Defendant argues that the provision in the ordinance regarding speakers who support "the human services objectives of the City" is actually part of a *waiver* of the requirements for *non*-First Amendment permits. Defendant argues that this provision cannot be said to be content-based, because the First Amendment exception, in a sense, insures that all "content-based" activities will proceed. Insofar as content-neutral speech is concerned, Defendant seems to argue, the "human services" provision represents a permissible content-based determination. Defendant's position is inescapably circular.

**10.** It is by no means clear that Admin.Reg. § 107(A)(1) can cure this ambiguity.

Therefore, the Court finds that the unconstitutional aspects of the ordinance are inherent in the scheme itself, and thus are not severable.

## IV. CONCLUSION

It may have been with the best intentions that the City included a First Amendment exception in the instant ordinance, but it is impossible to expect the Director of the Department of Cultural and Recreation Services to accurately and fairly implement such a "standard." Indeed, courts have grappled with the meaning of this "standard" for over 200 years. The ordinance requires the Director to review the content of each permit application to determine whether the activity is entitled to First Amendment protection. The Supreme Court's decisions discussed above have found such grants of discretion to be unconstitutional.

Moreover, this matter comes before this Court at the preliminary injunction stage. The above discussion demonstrates that Plaintiffs are likely to prevail ultimately on their First Amendment challenge, but even if Plaintiffs have only shown "serious questions," the balance of hardships undoubtedly tips sharply in their favor. The City alleges that the injuries which it will suffer in the event a preliminary injunction is issued will be inconveniences and hardships to the City's parks and those who frequent them. On the other hand, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976).

While the Court is not unsympathetic to the administrative, managerial, and fiscal problems which the City of Santa Monica surely faces, these concerns simply cannot outweigh the potential deprivation of the First Amendment rights of Plaintiffs.

Therefore, for the reasons discussed *supra*, Plaintiffs' motion for a preliminary injunction is GRANTED.

## ORDER

IT IS ORDERED that pending a hearing on a permanent injunction in this matter or a trial on the merits, the above named Defendant, its agents, employees, and successors are hereby preliminarily enjoined from enforcing the provisions of Santa Monica Ordinance Number 1668 (CCS), regulating use of the public parks and other open areas within the City.

This Court finds that Defendant is not likely to suffer monetary injury if it is enjoined from enforcing the above-stated ordinance and that Plaintiffs are therefore relieved of the requirement to post bond in this matter.

IT IS SO ORDERED.