**Harlan L. JACOBSEN, dba Solo RFD and Single Scene, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, et al., Defendants.**

**No. CIV 85–2540 PHX–EHC.**

United States District Court,
D. Arizona.

Jan. 6, 1986.

Robert A. Hirschfeld, Phoenix, Ariz., for plaintiff.

---

Paul A. Katz, Asst. U.S. Atty., Phoenix, Ariz., for defendants.

### ORDER

CARROLL, District Judge.

Plaintiff Harlan L. Jacobsen operates newspaper vending machines in Des Moines, Iowa; Aberdeen, South Dakota; Lincoln, Nebraska; and Fargo, North Dakota under the trade name SOLO RFD. Plaintiff alleges that his machines have been removed from their location in front of the Federal Post Offices in these cities.

The Court heard plaintiff's Motion For Temporary Restraining Order & Preliminary Injunction on December 16, 1985. The hearing was continued to December 23, 1985. On December 20, 1985 plaintiff filed an Amended Complaint. On December 23, 1985 the Court heard testimony respecting the location of the newspaper racks in relation to the Post Offices in Lincoln, Nebraska; Fargo, North Dakota; and Aberdeen, South Dakota. The Court has also received and reviewed the affidavits submitted by the parties.

One moving for a preliminary injunction must demonstrate either (1) probable success on the merits and irreparable injury, or (2) that serious questions are raised and the balance of hardships are tipped sharply in his favor. *Duke v. Langdon,* 695 F.2d 1136, 1137 (9th Cir.1983).

### Nature of the Randolph-Sheppard Act

■ The sole question presented in this action is whether the Randolph-Sheppard Act is violative of the first amendment as it applies to newspaper distributors. Congress adopted the Act "[f]or the purposes of providing blind persons with remunerative employment, enlarging the economic opportunities of the blind, and stimulating the blind to greater efforts in striving to make themselves self-supporting." Title 20, United States Code, Section 107. In order to achieve these aims, Congress provided that "[i]n authorizing the operation of vending facilities on Federal Property, priority shall be given to blind persons licensed by a State agency." Further, Title 20, United States Code, Section 107d–3 provides that 100 per cent of vending machine income from machines in direct competition with a blind licensee shall accrue to blind licensees; 50 per cent of the income from machines not in direct competition with a blind licensee shall accrue to blind licensees, or, if there is no blind licensee on the property, to the State licensing agency in whose State the Federal property is located. Thus the Randolph-Sheppard Act operates as a uniform tax applied to all products distributed on Federal property. Newspapers are not singled out for purposes of this tax.

The Act is designed to ensure that enterprises operated by the blind enjoy a commercial advantage on Federal property and financial benefit from business activities conducted on Federal property, without regard to the content of any speech involved. While the General Services Administration or Postal Service retain discretion to determine the types of articles and services offered on postal property, only the vendor and the state licensing agency determine the individual articles or services to be sold. See General Services Administration Order PBS P 5815.2. Neither the General Services Administration nor the Postal Service bears any discretion over the content of the newspapers sold on postal property. See Affidavit of Robert Marcus.

### The Constitutionality of Economic Regulations Applied to Newspapers

"It is beyond dispute that the States and the Federal Government can subject newspapers to generally applicable economic regulations without creating constitutional problems." *Minneapolis Star & Tribune v. Minnesota Commissioner of Revenue,* 460 U.S. 575, 103 S.Ct. 1365, 1369–70, 75 L.Ed.2d 295 (1983). In the seminal case *Grosjean v. American Press Co., Inc.,* 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936), the Court held that a State license tax imposed on the owners of newspapers for the privilege of selling or charging for the

advertising therein, and measured by a percentage of gross receipts from such advertisements, but applicable only to newspapers enjoying a circulation of 20,000 copies per week was violative of the first amendment. In so holding, the Court recognized that the first amendment does not prohibit the imposition of a tax applicable to enterprise generally.

> It is not intended by anything we have said to suggest that the owners of newspapers are immune from any of the ordinary forms of taxation for support of the government. But this is not the ordinary form of tax, but one single in kind, with a long history of hostile misuse against the freedom of the press.... The tax here involved is not bad because it takes money from the pockets of the appellees. If that were all, a wholly different question would be presented.

*Id.* at 250, 56 S.Ct. at 449.

Following *Grosjean*, it has become well-established that the press has business aspects and "[l]ike others [they] must pay equitable and nondiscriminatory taxes on [their] business." *Associated Press v. National Labor Relations Board*, 301 U.S. 103, 133, 57 S.Ct. 650, 656, 81 L.Ed. 953 (1937). *See Federal Communications Commission v. National Citizens Committee For Broadcasting*, 436 U.S. 775, 98 S.Ct. 2096, 56 L.Ed.2d 697 (1978); *Mabee v. White Plains Publishing Co., Inc.*, 327 U.S. 178, 184, 66 S.Ct. 511, 514, 90 L.Ed. 607 (1946) ("The *Grosjean* case is not in point here. There the press was singled out for special taxation and the tax was graduated in accordance with the volume of circulation. No such vice inheres in this legislation.")

The tax imposed by the Randolph-Sheppard Act is not limited to the distribution of newspapers. The tax extends to all products distributed on Federal property. Thus the Act constitutes an equitable and non-discriminatory tax which constitutionally may be assessed against those engaging in first amendment activity, as in any other business activity.

The Court has also recognized a distinction between a tax imposed on the income derived by one engaging in first amendment activity or property used while engaging in first amendment activity and a tax exacted for the privilege of engaging in first amendment activity. *Walz v. Tax Commission*, 397 U.S. 664, 707, 90 S.Ct. 1409, 1431, 25 L.Ed.2d 697 (1970) (Douglas, J. dissenting) (citing *Murdock v. Pennsylvania*, 319 U.S. 105, 112, 63 S.Ct. 870, 874, 87 L.Ed. 1292 (1943)). This distinction differentiates a proceeds tax from a licensing fee.

The imposition of a proceeds tax upon first amendment activity presents a different constitutional question than presented when considering a licensing fee. See *Gannett Satellite Information Network v. Metropolitan Transportation Authority*, 579 F.Supp. 90 (S.D.N.Y.1984), *rev'd*, 745 F.2d 767 (2d Cir.1984). While the government may not ordinarily profit by imposing licensing or permit fees on the exercise of a first amendment right, *Gannett, supra*, 745 F.2d at 774, the government can raise revenue through the imposition of a nondiscriminatory tax on the proceeds of first amendment activity. *Associated Press v. National Labor Relations Board*, 301 U.S. at 133, 57 S.Ct. at 656. The Randolph-Sheppard Act does not impose a licensing fee on newspaper distributors for the privilege of engaging in first amendment activity on Federal property. A vendor is not required to pay any fee for the privilege to sell goods on Federal property. Instead, the Act exacts a tax on the proceeds of sales, including newspaper sales, on Federal property.

Accordingly,

IT IS ORDERED that plaintiff's Motion For Temporary Restraining Order and Preliminary Injunction is denied.