Harlan L. JACOBSEN, etc.,
Plaintiff-Appellant,

v.

UNITED STATES POSTAL SERVICE,
et al., Defendants-Appellees.

No. 86–1533.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 16, 1987.

Decided March 13, 1987.

Robert A. Hirschfeld, Phoenix, Ariz., for plaintiff-appellant.

Richard S. Allemann, Phoenix, Ariz., and James D. Whitney, Tucson, Ariz., for defendants-appellees.

**1152**

Before NELSON, KOZINSKI and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Harlan L. Jacobsen (Jacobsen) appeals from the denial of a temporary restraining order and preliminary injunction by the district court in a suit that Jacobsen has brought against the United States Postal Service and General Services Administration (the administrators), 624 F.Supp. 520 (1986). To succeed, Jacobsen must show likelihood of success on the merits and irreparable injury if denied the injunction or that he has raised serious questions and the balance of hardships tips sharply in his favor. *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1201 (9th Cir.1980).

Jacobsen is the publisher of two newspapers, *Singles* and *Solo R.F.D.*, directed at the market of young unmarried persons. According to his affidavit, the administrators in September 1985 removed from the entrance to the Lincoln, Nebraska main post office one of his news racks vending *Solo R.F.D.*, and shortly thereafter removed a similar rack from the sidewalk in front of the main post office. A third rack was seized in Lincoln by the administrators in December 1985. Also in December, the administrators removed another of his racks which had been placed on a ledge in front of the post office building in Fargo, North Dakota. Again, in October 1985, the administrators took one of his racks from its location near the post office in Aberdeen, South Dakota. In Jacobsen's experience his newspapers sell better from locations near the entrance to a post office than in other locations, and his fledgling business suffers irreparable harm if the administrators ban his papers from location on property in front of the entrance to post offices.

The administrators rely upon a federal statute, 20 U.S.C. § 107d-3, enacted in 1974 to strengthen the federal government's assistance to the blind. The statute effects a monopoly for blind vendors at federal property by providing that "vending machine income obtained from the operation of vending machines on Federal property shall accrue (1) to the blind licensee operating a vending facility on such property;" or (2), in the event there is no blind licensee operating such facility on such property, to a state agency for the blind. The statute provides that if there is a "blind vending facility" on the premises, 100 percent of all vending machine income from other machines shall accrue to the blind vendor. If there is no blind vendor, 50 percent of the vending machine income shall accrue to the state agency for the blind.

The administrators are willing to allow Jacobsen's racks on federal property if he complies with the statute—that is, if he turns over all his income from the racks to a blind vendor where there is one on the property, or 50 percent of his income from the racks to a state agency for the blind, where there is no blind vendor on the property. Jacobsen has refused to accept this proposition. He has claimed that there has been discriminatory enforcement of the statute, alleging that the administrators permit newspapers of general circulation such as the *Minneapolis Star–Tribune* to be on federal property without paying anything to the blind, but apply the statute to him because of dislike for his papers. Jacobsen also raises a more general First Amendment contention that the statute as applied to any newspaper is an unconstitutional invasion of freedom of the press. Finally in Count IV of his complaint, he makes the very general claim that the administrators are relying on statutes which "on their face" are "violative of protections guaranteed by the United States Constitution." In his brief, he more specifically presses the claim that what the government is attempting to collect is not a lawful uniform tax, but a royalty extracted for the profit of the blind vendors.

The case is governed by *United States v. Grace*, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). *Grace* makes three things clear:

■ 1. The government, like a private owner of property, can reserve its property to be used for the purposes for which it

meant the property to be used. *Id.* at 178, 103 S.Ct. at 1707–08.

■ 2. Sidewalks are presumptively a public forum, even though they are owned by the federal government. Where there is no separation, fence or other indication that government sidewalks are being used in some special way in connection with the federal building they abut, the government cannot deprive them of their character of a public forum by the simple expedient of a statutory definition. *Id.* at 180, 103 S.Ct. at 1708–09.

■ 3. The government may impose, but must justify, reasonable time, place, and manner restrictions on the use of such sidewalks. *Id.* at 183–84, 103 S.Ct. at 1710–11.

Here the administrators have two governmental interests to protect—safe, unimpeded access to the post office, see *National Anti-Drug Coalition, Inc. v. Bolger,* 737 F.2d 717, 724 (7th Cir.1984); and an interest in aiding the blind, whose basis must be located in Article I, section 8 of the Constitution, "The Congress shall have power to ... provide for ... the general Welfare of the United States." The blind, partially handicapped and particularly deserving, have long been thought worthy of special federal assistance. Over a century ago, Congress appropriated money to aid the American Printing House for the Blind. 20 Stat. 468 (1879). In 1920, in the wake of World War I, a statute aimed at restoring not merely wounded veterans but disabled persons generally "to civil employment" included the blind within its reach. Vocational Rehabilitation Act, 41 Stat. 735 (1920). In 1936, as part of the massive federal effort to end unemployment, a statute which is the predecessor of the one here in question was passed. It was designed to reach the blind who could not be helped by programs such as the Public Works Administration. House of Representatives, Committee on Labor, *H.R.Rep. No. 1094,* 74th Cong., 1st Sess. (1936), 2. The new statute authorized the operation on federal property of stands by blind vendors. The declared purposes were "providing blind persons with remunerative employment, en-

larging the economic opportunities of the blind, and stimulating the blind to greater efforts in striving to make themselves self-supporting." 49 Stat. 1559 (1936). In 1954 the statute was amended to give these vendors preference. 68 Stat. 663 (1954). In 1974, disappointment was expressed that on the thousands of pieces of federal property there were only 874 blind vending stands. Senate Committee on Labor and Public Welfare, Report No. 93–937, 93rd Cong., 2nd Sess. (1974) 10. Amendments were adopted which contain the provisions objected to by Jacobsen. The special solicitude shown by Congress for the blind has been so long, so constant, and so pointed that it must be seen as manifesting a congressional conviction that the federal government has, in the words of yet another statute, "special federal responsibilities" to the blind. See Vocational Rehabilitation Act of 1973, Title III, 87 Stat. 377. Within its general interest in preventing unemployment, Congress has a particular interest in providing for the employment of the blind. Such special federal responsibilities are the second governmental interest on the basis of which the administrators defend the statute and rest their case.

■ The issue, then, is whether the restrictions 20 U.S.C. § 107d–3 places on newspaper vending machines on perimeter sidewalks are reasonable time, place and manner restrictions, justified in light of these competing interests. The practical effect of the statute is to make economically impossible the operation of newspaper vending machines on the sidewalk or at the very least, where there are no blind vendors in competition, to impose a substantial handicap on traditional use of a traditional public forum. An absolute prohibition in these areas "will be upheld only if narrowly drawn to accomplish a compelling governmental interest." *Grace,* 461 U.S. at 177, 103 S.Ct. at 1707. Other time, place and manner constraints may be enforced if they are "content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id.* (quoting *Perry Education Ass'n v. Perry Local Ed-*

*ucators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983)). We believe plaintiff has raised a serious question whether the burdens imposed by section 107d–3 in areas that are public forums can be justified under these standards.

The government admits that the perimeter sidewalks on post office property are public forums. Thus, for those areas, the question is whether section 107d–3 imposes reasonable and justifiable time, place and manner restrictions on plaintiff. The government distinguishes, however, the walkways leading from the public sidewalks into the post office buildings, arguing that those areas are not public forums, but are much like the interior of the post office building, and that a total ban on newspaper vending machines there is justified. We have not been presented with sufficient facts to decide here whether the ingress/egress walkways are public forums under *Grace.* That question will have to be presented to the district court on remand.

Jacobsen's affidavit as to the hardship imposed on his enterprise by the effect of the administrators' actions has not been refuted. The balance of hardships tips sharply in his favor. Where the precious First Amendment right of freedom of the press is at issue, the prevention of access to a public forum is, each day, an irreparable injury: the ephemeral opportunity to present one's paper to an interested audience is lost and the next day's opportunity is different. Raising a serious question of constitutional dimensions, he has met the conditions necessary to secure a preliminary injunction.

Accordingly, we remand to the district court with instructions that it issue a preliminary injunction ordering the government not to remove any newspaper rack of the appellant which does not obstruct access or endanger pedestrians and which is placed on any perimeter sidewalk owned by the government adjacent to a post office. We remand for consideration of whether preliminary injunctive relief is appropriate as to ingress/egress walkways.

Trial on the merits will afford both parties the opportunity of testing Jacobsen's other allegations and of refining the terms of the injunction. For purposes of this preliminary injunction we need not and do not need to rule whether there are other portions of post office premises which have been opened up by the government as a place for expressive activity. *See Cornelius v. NAACP Legal Defense and Education Fund,* 473 U.S. 788, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985); *Hale v. Department of Energy,* 806 F.2d 910 (9th Cir.1986); *American Postal Workers v. United States Postal Service,* 764 F.2d 858 (D.C.Cir.1985). Nor do we pass on the constitutionality of 20 U.S.C. § 107d–3 in the light of Article I, section 9 of the Constitution of the United States. Congress apparently views money raised under the statute as a "nonappropriated fund." 20 U.S.C. § 107b–3. We express no view on the constitutional status of such a "nonappropriated fund" while drawing it to the attention of the parties as an issue they may wish to explore more fully on remand.

REVERSED AND REMANDED WITH INSTRUCTIONS.