**Harlan L. JACOBSEN, Plaintiff–Appellant,**

v.

**UNITED STATES POSTAL SERVICE, Defendant–Appellee.**

No. 89–16054.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 1992.

Decided July 7, 1992.

As Amended April 30, 1993.

Harlan L. Jacobsen, pro se.

Michael R. Arkfeld, Asst. U.S. Atty., Phoenix, AZ, for defendant-appellee.

Before: WISDOM,* BEEZER and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Harlan Jacobsen placed newsracks containing his newspapers *Single Scene* or *Solo RFD* at three locations outside federal buildings housing United States Post Offices. He won a preliminary injunction in the Ninth Circuit against governmental removal of his newsracks located on perimeter sidewalks, which are public fora. The Court of Appeals, however, remanded to the district court the question of whether ingress-egress walkways were public fora. The district court, on remand, issued the injunction as ordered, but found the newsracks were, in fact, located on ingress-egress walks, which it held to be nonpublic fora. The removal of those racks was found not to violate the scope of injunction contemplated by the Court of Appeals. The district court also found the Randolph–Sheppard Act, which requires a percentage of receipts of vendors on federal property be given to the blind, did not violate the First Amendment. We affirm.

* The Honorable John Minor Wisdom, Senior United States Circuit Judge for the Fifth Circuit,

## I

Harlan Jacobsen publishes singles newspapers in Arizona. The events surrounding this appeal have to do with Jacobsen's placement of newspaper vending machines at United States Post Offices at three locations.

In Lincoln, Nebraska, Jacobsen placed his rack on the post office walkway that lies between the post office and its parking lot. Apparently, some customers complained about the nature of the publication. Jacobsen claims that as a result, his paper stand was removed by the government, and shortly after, all the newspapers for sale in racks on this walkway were moved to the perimeter city sidewalk.

In the Aberdeen, South Dakota, General Services Administration Building, Jacobsen again wished to vend his newspapers near a post office. The physical make-up of the exterior of that building is such that a municipal sidewalk runs in front of the terrace of the building. There are steps that lead from the sidewalk to the terrace, which the district court found were "intended to accommodate traffic to and from the post office for the conduct of postal business." Jacobsen was told by government officials that in order to leave his newspaper rack on the raised terrace, he would have to be licensed under the Randolph–Sheppard Act. Under 41 C.F.R. § 101–20.308 (1991), commercial vending is prohibited with the exception of operating stands conducted by the blind pursuant to the Randolph–Sheppard Act. *See* 20 U.S.C. § 107 (1988).

On September 16, 1985, Jacobsen placed his newsrack at the bottom of the stairs of the terrace. On September 27, 1985, Jacobsen was called to remove the newsrack for safety reasons. The newsrack was then moved by Jacobsen to a location approximately ten or fifteen feet away from the raised terrace on the municipal sidewalk where it is currently chained to a pole. Other newspapers on the raised terrace, not published by Jacobsen, have permits in compliance with the Randolph–Sheppard Act.

sitting by designation.

In Fargo, North Dakota, the building at issue is also a General Services Administration owned building. This building has two entrances, and each entrance is immediately adjacent to a sidewalk. The entrances themselves are surrounded by a marble or granite slab rising ten inches above the sidewalk. Jacobsen's newsracks were placed, at different times, on the granite/marble part of the building and fastened to a railing next to the lobby entrance. However, at other times, they were set on concrete, partially on the federally owned part of the sidewalk. Originally, Jacobsen's rack was placed along side the Minneapolis Tribune rack. After the government forced Jacobsen to move his rack, the government removed all the other racks from the front of the post office building. All newsracks are now entirely on the municipal sidewalk.

The preliminary injunction is confined to the three locations described above. However, in his brief to this court, Jacobsen also mentions five other post office locations where he maintains newsracks—Des Moines, Iowa; Sioux Falls, South Dakota; Rapid City, South Dakota; Deadwood, South Dakota; and Atchison, Kansas. It is evident that he mentions these other locations not in an effort to be granted relief in this appeal, but simply to show examples of how a ruling against him would affect other locations.

Because of these events, Jacobsen sought an injunction against the government's removal of his newsracks at Aberdeen, Lincoln, and Fargo. On January 6, 1986, the district court denied a preliminary injunction and temporary restraining order sought by Jacobsen against the United States Post Office. The Ninth Circuit overturned this ruling and directed the district court to "issue a preliminary injunction ordering the government not to remove any newspaper rack of the appellant which does not obstruct access or endanger pedestrians and which is placed on any perimeter sidewalk owned by the government adjacent to a post office." *Jacobsen v. United States Postal Serv.*, 812 F.2d 1151, 1154 (9th Cir.1987). However, the Ninth Circuit remanded to the district court the issue of whether ingress-egress walkways should also be subject to the preliminary injunction. *Id.*

The preliminary injunction was issued on May 27, 1987, and on June 15, 1987, Jacobsen filed a motion for contempt against the Postal Service for the removal of one of the newsracks, in seeming violation of the injunction. A hearing on the injunction and contempt motion was held on November 19, 1987. A second contempt motion was served on February 17, 1988, and the government answered on March 1, 1988. The motion was finally filed on March 4, 1988. On June 12, 1989, the district court permanently enjoined the government from removing the newsracks from the perimeter sidewalks, but denied injunctive relief for the ingress-egress walkways. With respect to the first contempt motion concerning the Lincoln Post Office sidewalk, the district court concluded that the walkway was an ingress-egress way and the government did not violate the preliminary injunction by removing the newsracks. The second contempt motion was not addressed.

With respect to the three locations at issue in this appeal, the district court found the location of Jacobsen's newsrack in Fargo was a safety hazard, was partly on the federal building, and was not a public forum. In Aberdeen, the location of his newsrack on the sidewalk in front of the stairs was found to be a safety hazard, the terrace was found to be nonpublic, and the Randolph–Sheppard Act was found not violative of the First Amendment. In Lincoln, the location of the newsrack was found to be on an ingress-egress walkway—a nonpublic forum.

Jacobsen appeals the lifting of the injunction with respect to the placement of the newsracks that the district court found were placed in ingress-egress locations. Jacobsen also appeals a second motion for contempt that he filed regarding the location of a newsrack at Sioux Falls. However, this motion was not ruled on by the district court.

## II

"When a district court holds a restriction on speech constitutional, we conduct an independent, de novo examination of the facts." *Daily Herald Co. v. Munro*, 838 F.2d 380, 383 (9th Cir.1988) (citation omitted). "We

conduct an independent review of the record to be sure that the speech in question actually falls within the protected category, and to determine whether the constitutional factors have properly been applied." *Gaudiya Vaishnava Soc'y v. City of San Francisco,* 952 F.2d 1059, 1062 (9th Cir.1991) (quotation omitted). The instant case requires us "to apply principles of First Amendment jurisprudence to the specific facts of this case." *ACORN v. City of Phoenix,* 798 F.2d 1260, 1263 (9th Cir.1986) (quotation omitted).

### III

### A

■ Jacobsen argues that "the local post office in communities across the country are [sic] looked on as dedicated to communication among people. In each community these public owned sidewalks leading to U.S. Post Offices should be open to First Amendment activities as much as are the sidewalks in front of the U.S. Supreme Court building." At least a plurality of the Supreme Court disagrees: "The sidewalk leading to the entry of the post office is not the traditional public forum sidewalk referred to in *Perry [Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) ]." *United States v. Kokinda,* 497 U.S. 720, 727, 110 S.Ct. 3115, 3120, 111 L.Ed.2d 571 (1990) (plurality). "The Government's ownership of property does not automatically open that property to the public." *Id.* 497 U.S. at 725, at 3119 (citing *United States Postal Serv. v. Council of Greenburgh Civic Ass'ns,* 453 U.S. 114, 129, 101 S.Ct. 2676, 2685, 69 L.Ed.2d 517 (1981)). Moreover, there is a lower level of scrutiny when the government function is not one of regulation, lawmaking, or licensing, but as a proprietary owner. *Id.* (citing *Cafeteria & Restaurant Workers v. McElroy,* 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1961)).

■ The Supreme Court has defined three types of fora: "the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Cornelius v. NAACP Legal Def. & Educ. Fund,* 473 U.S. 788, 802, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985). Traditional public fora are "those places which by long tradition or by government fiat have been devoted to assembly and debate." *Id.* (quotation omitted). The government may create fora, but "[t]he government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Id.* (citation omitted). We may not "infer that the government intended to create a public forum when the nature of the property is inconsistent with expressive activity." *Id.* If a forum is nonpublic, a complete ban may be imposed where the function of the property would be disrupted by expressive activity. *ACORN,* 798 F.2d at 1265 (citing *Greenburgh,* 453 U.S. at 132, 101 S.Ct. at 2686).

Under the plurality opinion in *Kokinda,* in order to determine whether the sidewalk outside a post office is a public forum, we must evaluate "the physical layout of the postal premises and ... its express governmental purpose." Mildred An, Note, *Free Speech, Post Office Sidewalks and the Public Forum Doctrine—United States v. Kokinda,* 497 U.S. 720, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990), 26 Harv.C.R.–C.L.L.Rev. 635, 643 (1991). In *Kokinda,* the Supreme Court dealt with what parts of the exterior of a post office constitute areas of traditional public fora, and what parts are nonpublic:

> The postal sidewalk at issue does not have the characteristics of public sidewalks traditionally open to expressive activity. The municipal sidewalk that runs parallel to the road in this case is a public passageway. The Postal Service's sidewalk is not such a thoroughfare. Rather, it leads only from the parking area to the front door of the post office.... [T]he postal sidewalk was constructed solely to provide for the passage of individuals engaged in postal business.

*Kokinda,* 497 U.S. at 727, 110 S.Ct. at 3120. Under this approach, ingress-egress walkways are not public fora, and the district court's determination that an injunction can only apply to perimeter sidewalks and not ingress-egress walks is legally correct according to the *Kokinda* plurality.

However, the decision in *Kokinda* was only a plurality and not the decision of the Court. Justice Kennedy's analysis, in an opinion concurring in the judgement, "differs in essential respects" from the plurality's analysis. *Kokinda*, 497 U.S. at 737, 110 S.Ct. at 3125 (Kennedy, J., concurring). Justice Kennedy stated that "the public's use of postal property for communicative purposes means that the surrounding walkways may be an appropriate place for the exercise of vital rights of expression." *Id.* However, even though it is a public forum, "the Government may intend to impose some limitations on the forum's use." *Id.* In *Kokinda*, Justice Kennedy felt "it [was] not necessary ... to make a precise determination whether this sidewalk and others like it are public or nonpublic forums; in my view, the postal regulation at issue meets the traditional standards we have applied to time, place, and manner restrictions of protected expression." *Id.* 497 U.S. at 738, at 3125–26.[1]

The four dissenting justices in *Kokinda* took a different approach to this issue and concluded that *all* sidewalks are public fora, period. Justice Brennan and his colleagues firmly rejected the plurality's approach as unrestrained "doctrinal pigeonholing." *Id.* 497 U.S. at 743, 110 S.Ct. at 3128. In the dissent's view, government property left open to the public is a public forum, and anyone who is rightfully there "carries with him as elsewhere the constitutional right to express his views in an orderly fashion." *Id.* (quoting *Jamison v. Texas*, 318 U.S. 413, 416, 63 S.Ct. 669, 672, 87 L.Ed. 869 (1943)).

The Ninth Circuit has not taken pluralities as being controlling. In *Tanner v. Heise*, 879 F.2d 572, 581 n. 8 (9th Cir.1989), the Ninth Circuit stated:

The district court erred in its characterization of Supreme Court precedent. The portion of the [*City of Oklahoma City v.*] *Tuttle* [471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791] opinion from which the district court concluded that the Supreme Court had "made clear" that a single incident of unconstitutional activity is not sufficient to impose liability under section 1983 unless proof of that incident demonstrates that it was caused by an underlying unconstitutional policy was joined only by a plurality of the Justices.... In a subsequent case ... the Court was unable to achieve a majority position either approving or disapproving this language.

In *United States v. Bates*, 917 F.2d 388, 395 n. 10 (9th Cir.1990), "the dissent argu[ed] that the decision in [*United States v.] Jorn* [, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) was] a mere plurality." *Id.* Then the majority went on to argue that the teachings of another case required a particular holding. In *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367, 1372–73 (9th Cir.1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985), the Ninth Circuit tried to find common ground between the plurality and the concurrences.

Thus, the Supreme Court has yet to give us a definitive answer on whether ingress-egress walkways are public fora.[2] Faced with this situation, we turn to our own precedents for guidance.

---

1. In the instant case, the regulation at issue is the same as that in *Kokinda*. Title 39 C.F.R. § 232.1(h) (1991) prohibits "[s]oliciting, electioneering, collecting debts, vending, and advertising." *Kokinda* involved volunteers for the Democratic National Policy Committee who had a table for soliciting contributions, selling books, and distributing literature. *Kokinda*, 497 U.S. at 720–25, 110 S.Ct. at 3117–18. The instant case involved the prohibition of vending—not personal solicitation. Because we do not decide this case on the basis of Justice Kennedy's concurrence, we do not reach the issue of whether section 232.1(h) is a reasonable time, place, and manner regulation as it regards newsracks.

2. In *International Soc'y for Krishna Consciousness, Inc. v. Lee*, — U.S. —, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992) ("ISKCon"), five Justices held that airports are nonpublic fora. While we may presume that now the Supreme Court would have five votes for holding a post office is a nonpublic forum, Justice O'Connor, in her concurrence, is careful to distinguish airports from post offices. *See id.* — U.S. at —, 112 S.Ct. at 2711 (O'Connor, J., concurring); *see also infra* note 4 (discussion of Justice O'Connor's concurrence). Moreover, the jurisprudence in this area is now quite muddied with *ISKCon*, making it difficult to comprehend exactly how the Supreme Court would rule in a case concerning newsracks at post offices, as opposed to solicitation and leafletting at airports. We agree with Justice O'Connor that post offices, which are often small buildings devoted to a single purpose, are very different from airports. Therefore, we continue to follow *Kokinda* as closer to the instant case.

In *Monterey County Democratic Cent. Comm. v. United States Postal Serv.*, 812 F.2d 1194 (9th Cir.1987), we held that certain postal walkways were not public fora. In so holding, we adopted and followed the rule that "allows the government to overcome the presumption that sidewalks are public fora when the federally owned sidewalk obviously is separate from municipal sidewalks, apprising those who approach of the difference." *Id.* at 1197 (citing *United States v. Grace*, 461 U.S. 171, 180, 103 S.Ct. 1702, 1708–09, 75 L.Ed.2d 736 (1983)).[3] Judge Tang, in his concurrence, seemed to anticipate *Kokinda* by stressing "this result is mandated by the particular physical layout of the walkway on the postal service premises." *Id.* at 1200 (Tang, J., concurring).

■ Therefore, the rule of this circuit is consistent with the *Kokinda* plurality—federal sidewalks obviously separate from the municipal sidewalk and devoted to postal customers are nonpublic. Accordingly, in order to determine whether it was a violation of the injunction for the government to remove Jacobsen's newsracks, we must evaluate each location's physical layout, and determine whether Jacobsen's First Amendment rights were violated in any of the three locations at issue in this appeal.

■ In the Lincoln, Nebraska case, the post office is separated from the municipal sidewalk by a parking area. Jacobsen placed his newsracks on the walkway on federal land directly in front of the post office—not on the municipal sidewalk. Jacobsen claims that "[p]hotographs submitted for the record reflect no difference where the Lincoln sidewalk joins the municipal at an angle. Hardly the indication the public needs to distinguish between traditional public forum sidewalk areas and some special Federal oasis sidewalks somehow reserved and excluded from normal First Amendment activities." A review of the photographs in the record, however, reveals that the rack is on a sidewalk that is clearly a federal and not a municipal sidewalk. We hold that the physical layout is similar enough to *Kokinda* to qualify as nonpublic. Although Jacobsen stresses that the public sidewalk is actually continuous with the federal sidewalk, distinguishing it from *Kokinda*, the break between the federal and nonfederal sidewalks is obvious, and once the two sidewalks separate, there is clearly a parking lot between them. The federal land is clearly demarcated.

■ In Aberdeen, South Dakota, the newsrack is currently chained to a pole on the municipal sidewalk, ten to fifteen feet from the stairs leading up to the post office. The injunction against removing the racks would apply to the newsrack at that location, and the government is satisfied with keeping the newsrack there. Jacobsen, however, wishes to place his newsrack either on the terrace with the other newspapers or on the public sidewalk directly next to the stairs leading up to the terrace. Because the terrace would clearly be considered a nonpublic forum under the *Kokinda* plurality, the government may regulate that area. The regulation requiring Jacobsen to satisfy the requirements of the Randolph–Sheppard Act is just such a regulation. Whether the compliance with the Randolph–Sheppard Act is unconstitutional will be discussed in the next section.

■ With respect to the placement of the machines just in front of the steps of the terrace, this placement clearly is on a public sidewalk—a traditional *public forum*. The government claims this placement created a safety hazard because it obstructed the entry for pedestrians. A review of the exhibits reveals Jacobsen's desired placement of the rack just below the stairs to be a potential safety hazard. Moreover, moving the rack a few feet away—to place it out of the way of people walking up the stairs of the post office—is a reasonable alternative. It is permissible for the government to move the rack for safety reasons. *Heffron v. International Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 650, 101 S.Ct. 2559, 2565, 69 L.Ed.2d 298 (1981) ("As a general matter, it

---

**3.** *Monterey County* was decided on March 17, 1987. *Jacobsen* was decided on March 13, 1987. Had *Jacobsen* been decided after *Monterey County,* the *Jacobsen* panel might not have felt compelled to remand in order to determine "whether preliminary injunctive relief is appropriate as to ingress/egress walkways." *Jacobsen* 812 F.2d at 1154.

is clear that a State's interest in protecting the 'safety and convenience' of persons using a public forum is a valid governmental objective" (citation omitted)).

Fargo, North Dakota, is the most difficult location to evaluate and where we part company with the dissent. Determining whether this space is public or nonpublic is, admittedly, a very close call. An examination of the exhibits presented in the district court leads us to make a different call from the dissent.

The sidewalk directly in front of the post office is a municipal sidewalk, but the walkway under the overhang, which has railings leading to the door of the post office, is federal property. Jacobsen's rack is now placed next to a light pole on the municipal sidewalk—this is clearly permissible and on public property. The district court order protects the current placement of that newsrack. We conclude, however, that the *desired* locations of the newsrack are within the federal enclave.

■ Jacobsen first placed his rack either on the granite ledge of the building, or placed a concrete counterweight and chains on the granite ledge with his newsrack on the sidewalk. The granite ledge is a part of the federal building and is thus a nonpublic forum.

■ The second location of the newsrack was set back in an area next to one of the entrances, but within the curtilage of the building. Although not separated by a parking lot, as in *Kokinda* or *Monterey County,* there is a clear line of demarcation in the sidewalk that distinguishes the federal entryway from the municipal sidewalk. The contested space under the overhang is divided by pillars and metal grill partitions that extend to the end of the federal property. This alcove is a space created because the entrance was set back from the sidewalk.

We conclude that a person would be apprised of the fact she was on federal property when inside an alcove tucked under the overhang and in the area defined by the pillars, metal grills, and the line in the sidewalk. If one did not have business with the post office, one would have to intentionally deviate from one's path in order to walk within this

space. This is a nonpublic forum, and is not protected by the injunction.

■ To the extent that the newsrack was on the *municipal sidewalk*—with its counterweight on the granite slab or chained to the metal grill—it was on a public forum, although we conclude it was a safety hazard. The record indicates the other racks located along that sidewalk were either on the granite portion of the building or in the alcove under the overhang. We conclude there was adequate justification for moving Jacobsen's newsrack, which was situated in the middle of the sidewalk, to an area out of the way of foot traffic, next to the lamp post, about ten feet away on the other side of the sidewalk. As Patricia Heintzman, a building manager for the G.S.A. in Fargo, stated, "[t]here is heavy traffic there at various times during the day and somebody could have bumped into it rather easily." Jacobsen's placement of the concrete block counterweight and chains on the granite slab seems to show that his device was protruding too far into the sidewalk. It was permissible for the government to move the rack for public safety. *Heffron,* 452 U.S. at 650, 101 S.Ct. at 2565. The current placement on the curb, just across the sidewalk from the entrance, is a reasonable alternative.

■ In the above three locations, where the government restricted access to nonpublic fora, we note that the government has

[t]he right to make distinctions in access on the basis of subject matter.... These distinctions may be impermissible in a public forum but are inherent and inescapable in the process of limiting a nonpublic forum to activities compatible with the intended purpose of the property. The touchstone for evaluating these distinctions is whether they are reasonable in light of the purpose which the forum at issue serves.

*Monterey County,* 812 F.2d at 1198 (quoting *Perry,* 460 U.S. at 49, 103 S.Ct. at 957). Currently there are total bans in Fargo and Lincoln against placement of newsracks on government property. The government claims that Jacobsen would be allowed on the terrace in Aberdeen were he to comply with

the Randolph–Sheppard Act. A Post Office is a single purpose forum, where banning newsracks, except under the Randolph–Sheppard Act, is reasonable.[4] There is no indication in the instant case that the Postal Service intended to discourage Jacobsen's viewpoints. Therefore, the district court order "enjoining any Government agency from removing any newspaper rack owned by plaintiff and placed on any perimeter sidewalk owned by the United States and adjacent to a United States post office and which rack does not obstruct access or endanger pedestrians," is a proper order, consistent with *Kokinda*—although *Kokinda* had not yet been decided at the time of the district court order—and *Monterey County*. The district court properly decided the issues with respect to the above three locations.

## B

The Randolph–Sheppard Act, as enacted under 20 U.S.C. § 107, requires that

vending machine income obtained from the operation of vending machines on Federal property shall accrue (1) to the blind licensee operating a vending facility on such property, or (2) in the event there is no blind licensee operating such facility on such property, to the State agency in whose State the Federal property is located.

20 U.S.C. § 107d–3(a) (1988).

The regulation requiring vendors of newspapers to contribute to a fund for the blind applies to all vendors on federal property and is content neutral. The difference between a regulation that is not Constitutional and one that is, is that "the first is aimed at the communicative impact of the conduct proscribed, it will be unconstitutional unless the government shows that the message triggering the regulation presents a 'clear and present danger' ... the second is aimed at the noncommunicative impact of conduct, it is constitutional, even as applied [to someone expressing a particular view]." Laurence H.

---

4. In *Lee v. International Soc'y for Krishna Consciousness, Inc.*, —— U.S. ——, 112 S.Ct. 2709, 120 L.Ed.2d 669 (1992) (per curiam) ("*Lee*"), the Supreme Court struck down a total ban of distribution of literature in airports. The Court issued a one sentence per curiam opinion which affirmed the Second Circuit for the reasons expressed in *ISKCon* by Justice O'Connor, Justice Kennedy, and Justice Souter. *Id.* —— U.S. at ——, 112 S.Ct. at 2710. Chief Justice Rehnquist, joined by Justices White, Scalia, and Thomas—the majority in *ISKCon* minus Justice O'Connor—dissented, finding the ban reasonable.

The difficulty in interpreting *Lee* is that Justice Kennedy's and Justice Souter's opinions strike down the ban on the ground that airports are public fora—a position explicitly rejected by the Supreme Court in *ISKCon*. Only Justice O'Connor believes that airports are nonpublic fora, and upholds the striking down of a total ban of leafletting in airports. In doing so, she notes that "[t]he determination that airports are not public fora thus only begins our inquiry." *Id.* —— U.S. at ——, 112 S.Ct. at 2712 (O'Connor, J., concurring). This is because "[t]he reasonableness of the Government's restriction ... must be assessed in light of the purpose of the forum and all surrounding circumstances." *Id.* (quotation omitted). However, Justice O'Connor admits the inquiry with respect to airports is inherently different than that of post offices, for "[o]rdinarily ... we have ... been confronted with cases where the fora at issue were discrete, single-purpose facilities." *Id.* —— U.S. ——, 112 S.Ct. at 2712 (O'Connor, J., concurring) (citing *Kokinda*, 497 U.S. at 720, 110 S.Ct. at 3115). She then

goes on to discuss how airports are *multipurpose facilities* because

the Port Authority [has] chosen *not* to limit access to the airports under its control, [and] has created a huge complex open to travelers and nontravelers alike. The airports house restaurants, cafeterias, snack bars, coffee shops, cocktail lounges, post offices, banks, telegraph offices, clothing shops, drug stores, food stores, nurseries, barber shops, currency exchanges, art exhibits, commercial advertising displays, bookstores, newsstands, dental offices and private clubs.

*Id.* For Justice O'Connor, "[t]he reasonableness inquiry, therefore, is not whether the restrictions on speech are consistent with preserving the property for air travel, but whether they are reasonably related to maintaining the multipurpose environment that the Port Authority has deliberately created." *Id.*

The reasonableness inquiry in the instant case is very different. As we held in *Monterey County*, Title 39 C.F.R. § 232.1(h), which prohibits soliciting and vending on postal property, except as allowed under the Randolph–Sheppard Act, *see* discussion *infra*, at 8071–72, is reasonably related to the *single* objective of the post office—to be "'an efficient system of collection, sorting, and delivery of mail nationwide.'" *Monterey County*, 812 F.2d at 1199 (quoting 39 U.S.C. § 403(b)(1)). We hold that it would be unreasonable to require the non-public space of a post office to accommodate all newsracks vendors who desire to vend in any particular post office. The opening up of post offices to all newsracks is inconsistent with the single purpose of the post office.

Tribe, *American Constitutional Law* 798 (2d ed. 1988) (citing *City Council of the City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (upholding municipal rule that forbad posting of signs on public property, where effect was prevention of political candidate from posting signs)). This regulation does not discriminate among types of communication based on content. With respect to newspapers, nondiscriminatory taxes are permissible. *See Minneapolis Star and Tribune Co. v. Minnesota Comm'r of Revenue,* 460 U.S. 575, 581, 103 S.Ct. 1365, 1369–70, 75 L.Ed.2d 295 (1983) ("It is beyond dispute that the States and the Federal Government can subject newspapers to generally applicable economic regulations without creating constitutional problems").

▆ The original Ninth Circuit opinion in this case left open the question of whether "the burdens imposed by section 107d–3 in areas that are public forums can be justified under these [Constitutional] standards." *Jacobsen,* 812 F.2d at 1154. The Ninth Circuit determined:

> The practical effect of the statute is to make economically impossible the operation of newspaper vending machines on the sidewalk or at the very least, where there are no blind vendors in competition, to impose a substantial handicap on traditional use of a traditional public forum. An absolute prohibition in these areas "will be upheld only if narrowly drawn to accomplish a compelling governmental interest." *Grace,* 461 U.S. [171] at 177[, 103 S.Ct. 1702 at 1707]. Other time, place and manner constraints may be enforced if they are "content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id.* (quoting *Perry Educational Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 [103 S.Ct. 948, 955, 74 L.Ed.2d 794] (1983)).

*Jacobsen,* 812 F.2d at 1153–54; *see also ACORN,* 798 F.2d at 1265 ("Speakers may be

excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest" (quotation omitted)). In public places, "communication may not be entirely prohibited." *Monterey County,* 812 F.2d at 1196. The Supreme Court has stated that, "[t]he right to use a public place for expressive activity may be restricted only for weighty reasons." *Grayned v. City of Rockford,* 408 U.S. 104, 115, 92 S.Ct. 2294, 2302–03, 33 L.Ed.2d 222 (1972). The right to sell newspapers by means of newspaper vending machines is protected by the First Amendment. *Lovell v. City of Griffin,* 303 U.S. 444, 452, 58 S.Ct. 666, 669, 82 L.Ed. 949 (1938) ("Liberty of circulating is as essential to that freedom as liberty of publishing" (quotation omitted)). If the Randolph–Sheppard Act would, in effect, create a complete ban on the exercise of First Amendment rights in a public forum, it would be unconstitutional.

▆ We, too, however, must leave open the question of the Constitutionality of the Act in a public forum, as did the previous panel assigned to this case. Even if the Randolph–Sheppard Act were unconstitutional with respect to regulating newsracks in a public forum, the government in the instant case is only attempting to apply the Randolph–Sheppard Act in the ingress-egress locations—in nonpublic fora.[5]

In Aberdeen, the government only invokes the Act on the terrace—clearly a nonpublic forum. Moreover, the government claims that were Jacobsen to comply with the Randolph–Sheppard Act, he is welcome to place his rack with the others in Aberdeen. The government does not try to apply the Act to the public sidewalk in Aberdeen.

In Fargo, when Jacobsen's rack was banned, there was talk of requiring the newspaper dealers then at the post office to start abiding by the Randolph–Sheppard Act. But when that fell through, all newsracks were moved to the nonfederal municipal sidewalk.

---

5. However, the Randolph–Sheppard Act itself leaves open the possibility that it could be applied in a public forum. The Act applies to federal property—which "means any building, land, or other real property owned, leased, or

occupied by any department, agency or instrumentality of the United States (including ... the U.S. Postal Service)." 34 C.F.R. § 395.1(g) (1991). This is irrespective of whether it is a public or nonpublic forum.

In Fargo, then, the government only attempts to apply the Act to nonpublic areas. There seems to be no attempt to use the Act in Lincoln.

■■■ With respect to *nonpublic fora*, "regulations of government property which affect expressive conduct will be upheld if they rationally further a legitimate state purpose." *Monterey County*, 812 F.2d at 1200 (quotation omitted); *see also Planned Parenthood v. Clark County School Dist.*, 941 F.2d 817, 829 (9th Cir.1991) (en banc) (" '[c]ontrol over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral' " (quoting *Cornelius*, 473 U.S. at 806, 105 S.Ct. at 3451)); *id.* at 830 n. 22 ("The Government's decision to restrict access to a nonpublic forum need only be *reasonable;* it need not be the most reasonable or the only reasonable limitation" (quotation omitted)). We must decide, then, as regards a nonpublic forum, whether the regulation is reasonable in its furtherance of a legitimate government interest.

The purpose of the Act is to provide "blind persons with remunerative employment, enlarging the economic opportunities of the blind, and stimulating the blind to greater efforts in striving to make themselves self-supporting." 20 U.S.C. § 107(a). To pursue this goal, when one is a vendor who is not blind, "50 per centum of all vending machine income from vending machines on Federal property which are not in direct competition with a vending facility operated by a blind vendor shall accrue to the State licensing

agency." 34 C.F.R. § 395.32(c) (1991); *see also* 20 U.S.C. § 107d–3(b)(1). If there is blind competition, then the fee would be 100% of the income. 34 C.F.R. § 395.32(c); 20 U.S.C. § 107d–3(b)(1).

■■■ The regulations define "vending machine income" as receipts after the reduction of costs.[6] In a private forum—where a complete ban would be allowed—even the 50% fee that would apply to Jacobsen is Constitutional for it is rationally related to the state's interest in helping the blind.

Moreover, at the preliminary injunction hearing, Robert Marcus, the Chief Concession Branch Officer in the General Services Administration stated the fee is, in fact, "50 percent of a *negotiated commission*, rather than 50 percent of *gross sales*." (Emphasis added.) In the instant case, the record reveals that, at least in Aberdeen, such a commission would be quite small. The Business Enterprise Supervisor for the Department of Vocational Rehabilitation for the state of South Dakota stated that "[i]n the event Solo RFD would agree to enter into a contract with our office in compliance with the Randolph–Sheppard Act it is anticipated that we would request a fee of *five cents per newspaper*." (Emphasis added.)

Marcus' interpretation should be given deference, for "[a]n agency's interpretation of its own regulations is generally entitled to a high degree of deference and should be upheld as long as it is not plainly erroneous or inconsistent with the language of the regulation." *Stone Forest Indust. v. Robertson*, 936 F.2d 1072, 1074 (9th Cir.1991). Certainly, in the instant case, Marcus' interpretation

---

**6.** The regulation states that the tax is "50 per centum of all vending machine income," and the regulation defines "Vending Machine Income" as

receipts (other than those of a blind vendor) from vending machine operations on Federal property, after deducting the cost of goods sold (including reasonable service and maintenance costs in accordance with customary business practices of commercial vending concerns), where the machines are operated, serviced, or maintained by, or with the approval of, a department, agency, or instrumentality of the United States, or commissions paid (other than to a blind vendor) by a commercial vending

concern which operates, services, and maintains vending machines on Federal property for, or with the approval of, a department, agency, or instrumentality of the United States. 34 C.F.R. § 395.1(z). It would seem that the "or commissions paid ... by a commercial vending concern" would not apply in the instant case, for Jacobsen is not working on commission. One reading of the regulation would require those who make money through receipts to pay 50% of that over to the government, and those who make money through commissions, pay 50% of that amount over to the government. However, the regulation is not being interpreted this way by the General Services Administration. *See* discussion *infra*.

accurately portrays how the Act is being applied to Jacobsen.[7]

Therefore, with regards to Jacobsen's newsrack in Aberdeen, the regulation is not being applied in an overly burdensome way. It is only being applied in nonpublic fora, and given the agency's interpretation of the regulations, there is not even a threat to take 50% of Jacobsen's income. The regulation is reasonable and rationally related to the legitimate government interest of helping the blind. The district court properly found that the Act merely "operates as a uniform tax applied to all products distributed on Federal property."

### C

Jacobsen finally complains that the administrator under the Randolph–Sheppard Act has unfettered discretion in the handing out of permissions to use newsracks.

"[I]t is unconstitutional to grant an official unfettered discretion to deny a permit application. Such discretion grants officials the power to discriminate and raises the spectre of selective enforcement on the basis of the content of speech." *Gaudiya Vaishnava Soc'y*, 952 F.2d at 1066 (quotations omitted). "Unfettered discretion to license speech cannot be left to administrative bodies." *NAACP, Western Region v. City of Richmond*, 743 F.2d 1346, 1357 (9th Cir.1984).

According to the regulation that implements the Randolph–Sheppard Act:

> Articles sold at vending facilities operated by blind licensees may consist of newspapers, periodicals, publications, confections, tobacco products, foods, beverages ... and other articles or services as are determined by the State licensing agency, in consultation with the on-site official responsible for the Federal property of the property managing department, agency, or instrumentality, to be suitable for a particular location.

34 C.F.R. § 395.35(c)(3). Moreover, the permit "shall further provide that installation

... shall be subject to the prior approval and supervision of the on-site official responsible for the Federal property of the property management department, agency, or instrumentality, and the State licensing agency." 34 C.F.R. § 395.35(e). The regulation does appear to grant considerable discretion to the on-site official.

Jacobsen complains the Act does not operate uniformly. He implies the blind agency will allow some views to be distributed and not others. He claims the Act is not applied to the other publishers with their newsracks within the nonpublic part of the post office.

■ Jacobsen's argument lacks merit. Even if the Act grants too much discretion to the administrator when he or she determines who is allowed onto federal *public* property, in the instant case, there is *no* attempt to apply the Act in a public area. Moreover, the record reveals no evidence of an abuse of the administrator's discretion. Again, in Aberdeen, if Jacobsen complies with the Act, his rack would be allowed onto the terrace—a nonpublic forum. In Lincoln and Fargo, there are currently complete bans of newsracks. Therefore, there is no justiciable controversy with respect to the reasonableness of who is granted licenses to vend on federal property under the Act. *See Gannett Satellite Info. Network v. Metro Transp. Auth.*, 745 F.2d 767, 776 (2nd Cir.1984).

### IV

Jacobsen also appeals a second motion for contempt that he filed against the government. Apparently the government received a copy of the motion on February 17, 1988. The government filed a motion to strike and a response to the second contempt motion on March 1, 1988. Oddly, Jacobsen did not actually file the complaint until March 4, 1988.

The district court failed to rule on this second motion in its decision of June 12, 1989. According to the clerk's record, this motion was also never subsequently decided.

---

7. Because the government's interpretation of the regulation is helpful to Jacobsen, and Jacobsen does not challenge this more generous interpretation, we do not reach the issue of whether interpreting the regulation's definition of "vend-

ing machine income" as a "negotiated commission," is plainly erroneous. Given the nonpublic fora involved here, either 50% of profits, or 50% of a negotiated commission would be Constitutional.

The government states that the district court was correct in not ruling on the motion because on January 20, 1988, Jacobsen moved the lower court to rule without a further evidentiary trial. In fact, this second contempt order dealt with the post office in Sioux Falls, and the district court, granting the government's motion in limine, determined at the preliminary injunction hearing that it was going to limit "our discussions today to the problems that we have at [Lincoln, Aberdeen, and Fargo]. And if Mr. Jacobsen has other problems, of course, he can file an action someplace else." The district court probably failed to rule on this motion because it limited the case to the above three locations and there was no evidence presented at the preliminary injunction hearing about Sioux Falls.

 Because the issue was not ruled on by the district court, we do not have jurisdiction under 28 U.S.C. § 1291 (1988) to review this motion. See 28 U.S.C. § 1291 ("The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States....."). Moreover, because the district court has not ruled on this action, it has not yet sanctioned the government for civil contempt. "Our circuit has frequently held that an adjudication of civil contempt is not appealable until sanctions have been imposed." *Donovan v. Mazzola*, 761 F.2d 1411, 1417 (9th Cir.1985) (citations omitted).

## V

We AFFIRM the decision of the district court, and AFFIRM the district court's denial of the first contempt motion. We do not rule on the second contempt motion.

WISDOM, Circuit Judge, concurring in part and dissenting in part:

I concur in the result reached by the majority with respect to the Lincoln, Nebraska and Aberdeen, South Dakota locations. I respectfully dissent, however, from the result reached by the majority with respect to the Fargo, North Dakota location.

The majority reads *Monterey County Democratic Cent. Comm. v. United States Postal Service*[1] and the plurality opinion in *United States v. Kokinda*[2] as holding that no federally owned ingress-egress sidewalk is a public forum. See op. at 654–55. I suggest that this reading of those cases is overly broad. Both of those cases held that a federally owned walkway that is not a public thoroughfare and that is separated from the public sidewalk by a parking lot is not necessarily a public forum. Thus, there are two questions to ask: (1) is the walkway in question a public thoroughfare and (2) is the walkway physically indistinguishable from the public sidewalk. Because sidewalks are traditionally considered public fora,[3] this Court should hold that a sidewalk is not a public forum only if these questions are answered in the negative.

In both Lincoln, Nebraska and Aberdeen, South Dakota these requirements are met. In Lincoln, a parking lot separates the postal walkway from the public sidewalk, and the walkway is neither designed nor used as a public thoroughfare. In Aberdeen, the raised terrace is clearly not a public thoroughfare—its only purpose is to allow access

---

1. 812 F.2d 1194 (9th Cir.1987).

2. 497 U.S. 720, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990).

3. *See, e.g. United States v. Grace*, 461 U.S. 171, 179, 103 S.Ct. 1702, 1708, 75 L.Ed.2d 736 (1983):

 Sidewalks, of course, are among those areas of public property that traditionally have been held open to the public for expressive activities and are clearly within those areas of public property that may be considered, generally without further inquiry, to be public forum property.

*See also, Monterey County*, 812 F.2d at 1197: "Public places of outdoor pedestrian traffic—sidewalks—long have been representative of areas held open to the public for expressive activities"; and *Jacobsen v. United States Postal Service*, 812 F.2d 1151, 1153 (9th Cir.1987):

 Sidewalks are presumptively a public forum, even though they are owned by the federal government. Where there is no separation, fence or other indication that government sidewalks are being used in some special way in connection with the federal building they abut, the government cannot deprive them of their character of a public forum by the simple expedient of a statutory definition.

into the building. Although there is no parking lot separating the terrace from the public sidewalk, the fact that it is elevated five or six feet above the public sidewalk is certainly sufficient separation to apprise those who approach of the difference.

In Fargo, I agree that the granite ledge, which is actually part of the building, is not a public forum. Thus, it was permissible for the government to move Mr. Jacobsen's newsrack (or its concrete counterweight) from the ledge. I would hold, however, that the portion of the sidewalk owned by the government is a public forum.

The majority states "there is a clear line of demarcation in the sidewalk that distinguishes the federal entryway from the municipal sidewalk." Majority op. at 657. A review of the transcript and exhibits reveals that the only demarcation consists of a crack in the sidewalk between two sections of the concrete and a difference in the texture of the concrete itself. A person approaching would not be apprised of the difference. In *Monterey* and in *Kokinda,* the federal sidewalk was physically distinguishable from the municipal sidewalk, and both courts stressed that physical separation as a factor in their decisions. Here, there is no physical separation, there is only a property line and the fact that the contractor poured the concrete so that a crack is fortuitously located on or near that property line.

Furthermore, the federally owned sidewalk in Fargo is a public thoroughfare. No one disputes that the municipal sidewalk is a public thoroughfare, and that the municipal sidewalk is a public forum. Because there is no physical separation, the federally owned sidewalk is nothing more than an extension of this same public thoroughfare. Thus, I would find that the sidewalk in front of the Fargo post office is a public forum.[4]

The majority finds that it was permissible for the government to move Mr. Jacobsen's newsrack for safety reasons. While it is true that it is permissible for the government to move the newsrack for safety reasons, mere invocation of a safety justification will not suffice to protect the government's actions.

Patricia Heintzman, the GSA building manager in Fargo, testified that both locations in which Mr. Jacobsen placed his newsrack were in the way of pedestrian traffic. The majority finds that there was adequate justification for moving Mr. Jacobsen's newsrack because it was allegedly situated in the middle of the sidewalk, whereas the other racks were allegedly either on the granite ledge or in the alcove. Mr. Jacobsen's newsrack was in a public forum, and the government has the burden of proving the validity of its safety justification. After reviewing the records and the transcript, I find that the exact location of the other newsracks is unclear. Without knowing the location of the other newsracks, it is impossible to analyze the accuracy of the government's assertions. I would hold that the government did not carry its burden.

My conclusion is bolstered by other facts that cast doubt on the government's position. Mr. Jacobsen placed his newsrack next to several other newsracks in each instance. Mr. Jacobsen's newsrack was first removed in September 1985. This lawsuit was filed November 1985. Mr. Jacobsen's newsrack was removed from its second location in January 1986. None of the other newsracks which were located in the same "hazardous" area as Mr. Jacobsen's, were moved to the curb until August 1987.[5] In short, almost two years elapsed between the time Mr. Jacobsen's newsrack was removed, ostensibly for safety reasons, and the time that the other newsracks were removed from the same location. Indeed, the testimony regarding the removal of the other newsracks shows that they were finally removed because the vendors had not complied with the Randolph–Sheppard Act—not because there

---

4. With respect to the Fargo location, *United States v. Grace,* 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983), is highly instructive. The Court held that the sidewalks surrounding the Supreme Court building were public fora because "[t]here is no separation, no fence, and no indication whatever to persons stepping from the street to the curb and sidewalks ... that they have entered some special type of enclave". *Id.* at 180, 103 S.Ct. at 1708–09.

5. I note in passing that the preliminary injunction hearing was originally scheduled for August 4, 1987.

was a safety hazard. The government's contention that Mr. Jacobsen's newsrack was removed because it created a safety hazard does not withstand analysis in light of these facts.

The only justification that the government has for removing Mr. Jacobsen's newsrack is his non-compliance with the Randolph–Sheppard Act. I do not express an opinion on the constitutionality of that Act and its applicability to a public forum such as the sidewalk in front of the Fargo post office. The district court did not consider this aspect of this suit because the court found, mistakenly I believe, that this sidewalk was not a public forum. I would remand this portion of the case so that the parties and the district court might have a full opportunity to address this issue.